WM. H. RHEA v. TERRITORY.

No. 306.   Opinion Filed November 27. 1909.

(105 Pac. 314.)

1.    CONTINUANCE—Discretion of Court—Review—Application—
Sufficiency—Allegation as to Absent Testimony—Threats.   (a)
An application for a continuance is addressed to the discretion
of the trial court, and, unless an abuse of this discretion is
shown from the record, a conviction will not be reversed be-
cause a continuance was not granted.

(b) An application for a continuance must be complete
within and of itself. It cannot be aided by inference or pre-
sumption. The presumption will be entertained that the appli-
cation states the facts relied upon in the strongest possible
light in favor of the defendant.

(c) An application for a continuance must not only state
the facts expected to be proven by the absent witness, but
must go further and state enough of the facts of the case to
enable the trial court to understand the materiality of the
absent testimony.

(d) It is not enough, in an application for a continuance in
a murder case, to allege that the defendant expects to be able
to prove by the absent witnesses that the deceased threatened
to kill the defendant; but the application should go further, and
allege that the defendant will be able to prove that at the time
of the homicide the deceased, by some act then done, caused
the defendant to believe that the deceased was then about to
carry such threats into execution.

2.    HOMICIDE—Indictment and Information—"Murder" and "Man-
slaughter"—Inclusion of Lower Degrees of Offense.   (a) While,
in one sense, "murder" and "manslaughter" are separate crimes,
yet, in a broader sense, they involve but one crime and are
only different degrees of felonious homicide.

(b) The rule of criminal pleading is universal that an in-
dictment for the highest degree of a crime includes all of the
lower degrees of the same crime.

(c) Upon an indictment for murder, a defendant may be
convicted for manslaughter.

3.    INSTRUCTIONS—Failure to Call Wife as Witness—Review—
Discretion of Lower Court—Additional Instructions.   (a) In a
case of murder, where it appears from the record that the wife
of the defendant is a material witness in the case, it is not
improper for the court to instruct the jury that by the laws
of this state a wife is not a competent witness against her

husband in such case, but that the defendant has the right to call her as a witness if he so desires.

(b) It would be improper for the court to suggest to the jury what inferences might arise from the failure of a defendant to place his wife upon the witness stand in his behalf. These inferences would depend upon the particular facts in each case and would be proper subjects for argument by counsel.

(c) If, before a jury has retired and begun the consideration of their verdict, the court thinks that it is necessary for their information to give them additional instructions, it has the power upon its own motion to give such instructions, and, in the absence of a showing of an abuse of this discretion, a reversal will not result therefrom. For circumstances not amounting to an abuse of this discretion. see opinion.

4.  HOMICIDE—Self-Defense—Threats.  (a) It is not error for the court to refuse to give an instruction upon the law of threats in a murder case which omits to state that, before the right of self-defense would arise upon threats, it must appear from the evidence that the deceased was then doing some act indicating a purpose to carry such threats into execution.

5.  TRIAL—Harmless Error—Admission of Evidence—Same Facts Testified to by Accused.  (a) While it is true that, as a general proposition, a defendant is entitled to a trial upon legal evidence alone, yet it is equally true that the admission of incompetent evidence which would not have prejudiced the defendant is not ground for reversal and constitutes harmless error.

(b) Although evidence may be improperly admitted against the defendant, on account of which a conviction would be reversed, yet. if the defendant takes the witness stand and testifies to the same thing, the error in receiving the other evidence will become harmless, and then will not be ground for reversal.

(Syllabus by the Court.)

*Appeal from District Court, Canadian County; C. F. Irwin, Judge.*

William H. Rhea was convicted of manslaughter, and he appeals. Affirmed.

At the March term, 1907, of the district court of Canadian county, the grand jury returned an indictment against Wm. R. Rhea, hereinafter called "defendant," charging him with the murder of Arthur Newall. Said cause was tried at the July term, 1907, of said court, and the defendant was found guilty of manslaughter. A motion for new trial was presented and overruled,

and the punishment of the defendant was fixed by the court at 30 years' imprisonment in the penitentiary, and sentence was pronounced accordingly. The case is regularly before us on appeal.

*J. M. Frame* and *R. B. Forrest,* for appellant.

*Charles West,* Atty. Gen., and *E. G. Spilman,* Asst. Atty. Gen., for the Territory.

FURMAN, PRESIDING JUDGE. The first assignment of error complains of the action of the trial court in overruling defendant's application for a continuance. Section 4504, Wilson's Rev. & Ann. St. Okla. 1903, is as follows:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. If thereupon, the adverse party will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence."

This statute governs applications for continuances in criminal as well as in civil cases. From this statute it is seen that an application for a continuance is not sufficient unless it shows upon its face that the evidence sought to be obtained is material. An application for a continuance is addressed to the discretion of the trial court, and, unless an abuse of this discretion is shown, a conviction will not be reversed because a continuance was not granted. This can only be made to appear from the record. It therefore necessarily follows that an application for a continuance must be complete within and of itself. It cannot be aided by inference or presumption. It devolves upon a defendant seeking a continuance to show himself entitled to it by definite, exact, and certain averments. The court will presume that the pleader has

stated in the application the grounds relied upon in the strongest possible manner in favor of the defendant seeking the continuance. The statute in mandatory terms requires the application to show "the materality of the evidence expected to be obtained." This necessarily includes two propositions: First, the application should set forth the facts expected to be established by the absent witness; second, it must also show that such facts are material to the issues to be submitted to the jury upon the trial. Where the facts stated in an application may or may not be material, the facts in connection therewith which would make them material must also be stated. In other words, an application for a continuance, which does not set forth the facts or circumstances of the case sufficiently to enable the court to see that the testimony sought to be obtained is material, is fatally defective. This is the only logical construction which can be placed upon our statute upon the subject of continuances.

The application for a continuance in this case is based upon the absence of three witnesses, by whom the defendant stated that he expected to prove that the deceased had threatened to kill him (the defendant); but the application did not state a single fact or circumstance connected with the case which would render testimony of threats admissible. Is it the law that, if A. threatens to kill B., for this cause alone B. may arm himself and hunt A. up and shoot him down? If so, then fear and cowardice constitute a justification for murder. This is not, and never has been, the law. Even if there were authorities to this effect, we would not tolerate the doctrine that under the influence of mere fear one with legal sanction may become an assassin.

In *Walter Reed v. State,* 2 Okla. Cr. 589, 103 Pac. 1053, Judge Doyle, speaking for this court, said:

"If A. threaten the life of B., this fact will not of itself justify B. in killing A. There must be some overt act on the part of the person making the threat, from which it appears that there is real or apparent danger of the execution of the threat. Mr. Wharton, in his work on Criminal Evidence (paragraph 757), says: 'Can evidence to the effect that the deceased, prior to a homicide, threatened the defendant's life, be received? And, if so, is it a

prerequsite to the proof of such threats that they should be shown to have been communicated to the defendant? Certainly, if such evidence is offered to prove that the defendant has a right to kill the deceased, there being no proof of a hostile demonstration by deceased, then it is irrelevant. If A. threatens B.'s life, and this threat is known to B., B.'s duty is to have A. arrested by due process of law, not to shoot him; the right of self-defense being conditioned on an apparent attack. On the other hand, if the question is as to which party in the encounter is the assailant, then it is admissible to prove by the prior declarations of either that the attack was one he intended to make. Threats to this effect by the defendant are always, as has been seen, admissible; and it is properly held that there is equal reason, supposing a collision between the deceased and the defendant to be first proved, for the admission of threats by the deceased.' And Kerr on Homicide, p. 423, says: 'Where it is clearly and unequivocally shown that the defendant was the aggressor, and there is no pretense that the deceased was about to carry the threats into execution, or that the defendant had reasonable grounds to believe and did believe that such was the case, evidence of such threats by the deceased, although they were communicated to the defendant, is inadmissible.' "

The Court of Criminal Appeals of Texas properly announce the doctrine that mere threats alone amount to nothing, in the absence of proof that, at the time the deceased was killed, by some act then done the deceased manifested an intention to carry such threats into execution, and that an application for a continuance which only purported to prove threats should be refused. *Carter v. State,* 8 Tex. App. 372-375; *Logan v. State,* 17 Tex. App. 50-58; *Allen v. State,* Id. 637-644; *Miles v. State,* 18 Tex. App. 156-171; *Brooks v. State,* 24 Tex. App. 274-284, 5 S. W. 853; *Ellis v. State,* 30 Tex. App. 601-604, 18 S. W. 139; *Ex parte Taylor,* 35 Tex. App. 531-536, 28 S. W. 957.

We approve the principle announced in these cases. The application for a continuance in this case is fatally defective in failing to state facts and circumstances connected with the case, which would have rendered threats admissible and therefore material. The trial court did not err in refusing to grant the continuance.

Second. In their brief counsel for the defendant say:

"Plaintiff in error also contends: That it was error for the court to give instruction No. 2 (Record, p. 16). This contention is based upon the grounds: (1) That the indictment upon which the defendant was tried, which was good as a statutory indictment for murder, did not include the elements necessary to constitute the crime of manslaughter in the first degree; (2) that said 'indictment consisted of a single count which was sufficient in form under the statute as an indictment for murder. That under the statutes of Oklahoma but one offense can be set out or contained in one count, and that while it is permissible to charge the same act in different ways to meet the possibilities of the proof, or where the same act may constitute different offenses, the same may be set out in different counts in the indictment, but never is it allowable for one count to contain an allegation of more than one offense."

Sections 2162 and 2163, Wilson's Rev. & Ann. St. 1903, are as follows:

"Homicide is the killing of one human being by another.

"Homicide is either: First, murder. Second, manslaughter. Third, excusable homicide. Or, fourth, justifiable homicide."

From this it is seen that our statute divides felonious homicide into two degrees, namely, murder and manslaughter. While in one sense they are separate and distinct crimes, yet in a broader sense they both involve but one offense, and that is a felonious homicide; in other words, they are simply different degrees of one and the same crime. There is therefore no necessity for including in an indictment for murder a separate count charging manslaughter, for the rule of criminal pleading is universal that an indictment for the highest degree of a crime includes all of the lower degrees of the same crime. If a defendant is acquitted on an indictment for murder, who will contend that he can afterwards be indicted and convicted for manslaughter for the same homicide? This alone demonstrates that manslaughter is included in an indictment for murder. Every proper indictment for murder informs the defendant that he is charged with the felonious killing of a human being. This certainly gives him full notice of the nature and cause of the accusation against him. He cannot be heard

to complain if he is found guilty of a lower degree of the very crime with which he is accused than that stated in the indictment.

We could fill volumes with quotations from authorities sustaining these views. Mr. Wharton, in his great work on Homicide (section 653, on page 1043), says:

"On an indictment for murder the jury may find a verdict of manslaughter or of murder in the second degree; so also, on an indictment for murder in the second degree, there can be a conviction for manslaughter. Different defendants may be convicted of different degrees, and a verdict in a prosecution for murder of guilty as charged of manslaughter is sufficiently certain to warrant a judgment and does not find the accused guilty of two offenses. This rule applies to a verdict in a prosecution for murder of involuntary manslaughter, consisting of a killing in the commission of an unlawful act not amounting to a felony, or of a lawful act done in an unlawful manner or without due caution or circumspection. And a person charged with murder may be convicted of negligent homicide. And a conviction of involuntary manslaughter, consisting of the killing of a white person, though it does not apply where the involuntary manslaughter has special statutory ingredients which must be alleged, and which are not included in a general charge contained in the indictment, or where such manslaughter is regarded as a misdemeanor only. And a verdict for manslaughter may be returned in a prosecution for murder under a statute declaring an attempt to produce an abortion, which causes death, to be murder, as well as in the case of an indictment for any other kinds of murder. * * *"

This question has been passed upon by the Supreme Court of Oklahoma Territory in the case of *Jones v. Territory,* 4 Okla. 47, 43 Pac. 1073. Judge Burford, in rendering the opinion of the court, said:

"The appellant, Tom Jones, was prosecuted in the district court of Payne county for the crime of murder, tried by jury, convicted of manslaughter in the first degree, and sentenced to 50 years in the territorial penitentiary at Lansing, Kan. He brings the cause to this court upon certified copies of the indictment and journal entries embracing the trial, verdict of the jury, judgment, and sentence of the court. No other parts of the record or proceedings of the trial are before this court. The assignment of error contains 13 alleged errors, the first of which is as follows:

'The verdict of the jury finds the defendant guilty of two offenses, both of murder and manslaughter in the first degree.' The verdict as set out in the journal entry is as follows: 'Territory of Oklahoma v. Tom Jones. Verdict of Jury. We, the jury, in the above entitled cause, do upon our oaths find the defendant guilty in manner and form as charged in the indictment of manslaughter in the first degree. N. S. Davis, Foreman.' There is no merit in the contention that this verdict finds the defendant guilty of two crimes. The indictment charged murder in the usual form and embraces within its terms the charge of manslaughter in the first degree. It was proper on a trial of the charge of murder for the jury to find the defendant guilty of any charge necessarily embraced within that contained in the indictment, and the jury in their verdict makes certain that which they intended to do by finding the defendant guilty of manslaughter in the first degree in manner and form as charged in the indictment."

The court therefore did not err in giving the instruction permitting the jury to find the defendant guilty of manslaughter.

Third. Counsel in their brief say:

"Plaintiff in error next complains that the court erred in giving the following instructions: 'The jury are instructed that by the laws of the territory a wife is not a competent witness against her husband in a criminal case, and that the territory has no power to compel her to testify, nor will she be allowed voluntarily to do so; but she can be used in behalf of the defendant when called by him, the defendant having that right if he desires to use the same.'"

The record shows that the above instruction was given by the court after the prosecution had closed its opening argument, and while defendant's counsel was making his closing speech to the jury. It was contended, and the appellant now contends, that the giving of the instruction was inopportune and constitutes prejudicial error.

In support of this contention, counsel cite *State v. Hatcher,* 29 Or. 313, 318, 44 Pac. 586, 587, from the Supreme Court of Oregon. The Supreme Court said:

"The record discloses that the defendant's counsel, in their argument to the jury, maintained that the deceased was killed while attempting to commit a forcible felony on the defendant's wife. The district attorney, replying thereto, said in substance:

"There were but three persons present at the tragedy—the defendant, his wife, and the deceased. That the voice of the deceased was hushed in death. That the state could not call Mrs. Hatcher as a witness, and it was in the power of the defendant to have produced her. That she could have told all about the affair. That, if present, her testimony would have been adverse to the defendant, otherwise he would have secured her attendance; but failing to do so is proof that her testimony would have been against the defendant.' The defendant's counsel objected to this language, for the reason that the absence of the defendant's wife was no evidence of his guilt; but, the objection having been overruled, an exception was allowed."

In passing upon this question, the Supreme Court said:

"First, the record fails to disclose that the defendant's wife was, at the time of the trial, within the reach of the process of the court; and, second, it is also silent as to whether she had consented to become a witness for her husband, for without such consent upon her part she could not be compelled to testify. Hill's Ann. Laws Or. 1892, § 1366. In criminal actions the accused shall, at his own request, but not otherwise, be deemed a competent witness, provided his waiver of said right shall not create any presumption against him; but when he offers himself as a witness he becomes subject to the ordinary rules of cross-examination. Id. § 1365; *State v. Abrams,* 11 Or. 169, 8 Pac. 327, *supra.* If no presumption of the defendant's guilt can be invoked by reason of his failure to testify in his own behalf, how can such a presumption be created in his failure to produce his wife as a witness, when she cannot be compelled to testify without her consent."

Upon this ground this decision was correct, because under the statute of Oregon the right of the husband to use his wife as a witness depended upon her consent. We have no such statute. Therefore upon this ground the case cited has no application. Section 5495, Wilson's Rev. & Ann. St. 1903, is as follows:

"Except as otherwise provided in chapters 68 and 69, of the statutes of Oklahoma, the rules of evidence in civil cases are applicable also in criminal cases; provided, however, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, but they may in all cases be witnesses for each other, and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose com-

munications made by one to the other except on a trial of an offense committed by one against the other."

From this it is seen that no restriction or limitations are placed upon the right of the husband to place his wife upon the stand to testify in his behalf. She has no more right or power to refuse to testify when so placed upon the stand than any other witness would have.

The other ground upon which the decision in Hatcher's Case is based is not supported by reason. The attempted analogy between the failure of the husband to call his wife as a witness in his behalf, and his failure to take the stand as a witness for himself, fails because in the latter instance there is a mandatory, arbitrary statute forbidding that any reference shall be made to such failure or that any inference of guilt shall be drawn therefrom. There is no such provision in the statute making the wife a competent witness for her husband. We decline to be bound by a precedent which is based upon an attempted judicial amendment of a statute. For these reasons we do not recognize the case of *Hatcher v. State* as an authority in point.

The statute of Texas is similar to ours. Under that statute the Texas Court of Appeals, in *Mercer v. State*, 17 Tex. App. 476, said:

"We do not think the remarks of the prosecuting attorney, in his closing argument to the jury, which are complained of by the defendant, were beyond the scope of the legitimate argument. It was disclosed by the evidence that the defendant's wife must have known important facts bearing directly upon the issue in the case, and that she was within easy reach of the process of the court. She could have explained fully the occurrence testified about by his two daughters when he got his gun and said he would blow his brains out. She could have testified, perhaps, to many other facts which would have shed light upon this horrible transaction. It was not within the power of the prosecution to adduce her testimony, because, being the defendant's wife, she was not permitted under the law to testify against him in this case. He alone could call for her testimony, and compel its production. Her knowledge of the facts, whatever that knowledge might be, was at his command—was within his reach; and without he produced it, or con-

sented to its production, it was a sealed book, which no human tribunal has the power to open against him. Under these circumstances, we think the prosecuting attorney was justified in the remarks complained of, and that the court did not err in its action in relation thereto."

Counsel in their brief say:

"It is true that where a party suppresses testimony, induces the witnesses to leave the jurisdiction of the court, to swear falsely, or suppress some fact in his knowledge, or commits other acts of bad faith in connection with his cause, the same may be considered as a circumstance in the case; but never can the reliance of the defendant upon a legal right be impugned as bad faith or be distorted into evidence against him."

The instruction given simply informed the jury that the defendant had the legal right to call his wife as a witness in his behalf, if he so desired. We cannot see how this could have injured the defendant. Telling a jury what the rights of a defendant are cannot deprive him of them; but counsel contend that it pointed out a defect in the defendant's case. They say:

"Coming from the bench, a solemn declaration of law which they must consider in their deliberations, it was particularly harmful to the defendant, and, while it came in the form of an instruction of the court, the purpose that it really served was that of an argument to the jury pointing out a defect in defendant's case."

In a number of states the husband is denied the right to place his wife on the witness stand in his behalf in a criminal case. This was the law in that part of the state which was known as Indian Territory, prior to statehood. This often caused juries to sympathize with a defendant upon trial, because he was deprived of the testimony of his wife. It was therefore only fair to the territory that the jury should have been informed that if the wife of the defendant was not placed upon the witness stand, or if no effort to have this done had been made, it was not the fault of the territory, but was because the defendant did not desire it to be done. If inferences might be drawn, unfavorable to the defendant, from this failure to place his wife upon the witness stand or his failure to make any attempt to secure her testimony, they would be justi-

fied by law. This is the principle upon which the case of *Mercer v. State,* 17 Tex. App. 452, hereinbefore quoted, was affirmed. In fact, the principle is of universal application.

In Wigmore on Evidence, vol. 1, § 285, we find the following:

"The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's claim. Ever since the case of the chimney sweeper's jewel, this has been a recognized principle (1722, *Armory v. Delamirie,* 1 Strange, 505) : 'A chimney sweeper's boy, finding a jewel, took it to the defendant, a jeweler, for appraisal; but the defendant would not restore it. In an action of trover, in proving the value, 'the Chief Justice (Pratt) directed the jury that, unless the defendant did produce the jewel and show it not to be of the finest water, they should presume the strongest against him, and make the value of the best jewels the measure of their damages, which they accordingly did.' "

Mr. Wigmore then cites an unanswerable array of authorities to support the principle announced

It would have been improper, under our practice, for the court to have suggested to the jury what inferences they might draw from the failure of the defendant to place his wife upon the witness stand or to attempt to do so. The duty of the court ended in stating the law. Argument upon the law and the facts is always for counsel.

The instruction complained of was given before the argument on behalf of the defendant was concluded. Of course, it is better for all of the instructions to be given before the argument is begun. Section 5518, Wilson's Rev. & Ann. St. 1903, is as follows:

"In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it state the testimony of the case, it must in addition inform the jury that they are the exclusive judges of all questions of fact. Either party may present to the court any written charges, and request that it be given. If the court thinks it correct and pertinent, it must be given, if not, it must be refused. Upon each charge presented and given or refused the court must indorse or sign its decision. If part of any written charge

3 Cr.—16

be given and part refused the court must distinguish, showing by the indorsement or answer what part of each charge was given and what part refused."

If, before the jury have retired and begun the consideration of their verdict, the court thinks that it is necessary for their information to give them additional instructions, it has the power to do so, and, in the absence of a clear showing of abuse of this power, a reversal will not result therefor. Under some conditions it might be proper to give counsel for the defendant an opportunity to be heard as to the application of such instructions to the evidence in the case when given after they had concluded their argument. The instruction complained of stated the law correctly, and we fail to find any abuse of discretion upon the part of the trial court in submitting it to the jury.

Fourth. Counsel in their brief say:

"Appellant also contends that it was error for the court to refuse the defendant's request to instruct the jury as prayed for in the sixth instruction requested by the defendant and refused by the court, which was excepted to; same being as follows: 'In determining the question of whether the defendant believed that he was in imminent danger of losing his life or receiving great bodily harm, you will take into consideration the threats, if any, made by deceased against the defendant, the feeling existing between the deceased and the defendant, the enmity of the deceased toward the defendant, if any, and all facts and circumstances surrounding the immediate transaction as well as all which preceded it.' It is a well-settled rule of law that, when the question is as to whether the defendant believes himself to be in danger, communicated threats is a proper matter for the due consideration of the jury in determining that question. It is so apparent that the refusal of this instruction was error that we will not make further comment."

This instruction does not state the law correctly. It is not true that the defendant had the right to kill the deceased because the deceased may have threatened the defendant, or on account of any feeling which may have existed between the deceased and the defendant. If this was the law, then malice would be an element of self-defense, and a premium would be placed upon assassina-

tion. No matter what threats may have been made by the deceased against the defendant, no matter what the state of feeling between the deceased and the defendant may have been, the defendant did not have the legal right to kill the deceased, unless at the time of the homicide, by some act then done, the deceased manifested a purpose of then carrying such threats into execution. This all-important condition is ignored and left out of the requested instruction, but was clearly stated in the general instruction given by the court to the jury. The trial court did not err in refusing the special instructions requested. The principle therein announced is repugnant to reason, and, so far as we have been able to find, is not supported by a single authority.

Fifth. Counsel for the defendant complain of the action of the court in refusing to strike out the testimony of Charles L. Engle, to the effect that, soon after the defendant left El Reno, the Christian church took up the matter of the support of the wife and children of the defendant and assisted them in this respect, and to the further effect that the witness had never heard the character of the wife of the defendant called into question until the deceased was killed by the defendant. The objection urged to this testimony is that stated by counsel to "the tendency of the evidence, and the purpose for which it was offered was to show that the defendant was worthless and profligate and had failed to support his family; that Mrs. Rhea was a worthy woman of good character, that had been slandered by the defendant." It is true as a general rule, a defendant is entitled to be tried on legal evidence alone; but from this it does not necessarily result that a reversal should follow the reception of incompetent testimony in every case.

The Court of Criminal Appeals of Texas has time and again decided that the admission of incompetent evidence, which could not have prejudiced the defendant, is not cause for reversal. *Avery v. State,* 10 Tex. App. 199-212; *Post v. State,* 10 Tex. App. 579-595; *Logan v. State,* 17 Tex. App. 50-57; *Bond v. State,* 20 Tex. App. 421; *Hooper v. State,* 29 Tex. App. 614-616, 16 S. W. 655; *Sargent v. State,* 35 Tex. App. 325-337, 33 S. W. 364; *Shaw v. State,* 39 Tex. App. 162, 45 S. W. 597; *Roberts v. State,* (Sup.)

16 S. W. 255; *Lettz v. State,* 21 S. W. 371. In the case of *Stephens v. State,* 26 S. W. 728, it is held that, although evidence may be improperly admitted against a defendant, if he takes the stand and testifies to the same thing, the error is harmless.

In this case the defendant, while on the stand, testified that for many months before this homicide he had spent but little of his time with his family and had contributed very little to their support, and that during this time his wife had taken in washing to support herself and children. He also testified to his confidence in his wife until he became suspicious as to her relations with the deceased. His own evidence was to the same effect and was much more damaging against himself than was the testimony of the witness Engle. Therefore, even if Engle's evidence was improperly admitted, the error was harmless.

Counsel for the defendant make no objection as to the sufficiency of the testimony. It is therefore not necessary for us to discuss the evidence further than to say that the guilt of the defendant was the only rational conclusion at which an intelligent and honest jury could arrive. In fact, we see no rational escape from the verdict rendered.

The defendant in this case having been sentenced by the trial court to confinement in the penitentiary at Lansing, Kan., said judgment is amended and reformed, and said sentence will be changed to imprisonment in the penitentiary of Oklahoma at McAlester, and, as so amended, the judgment of the lower court is affirmed.

DOYLE and OWEN, JUDGES, concur.