## LYMAN BILLY v. STATE.

No. 1306. Opinion Filed March 1, 1913.

(130 Pac. 308.)

HOMICIDE—Evidence—Sufficiency—Instructions. In a prosecution for murder, the evidence is held sufficient to support the verdict of manslaughter in the first degree, and that no reversible error was committed on the trial.

(Syllabus by the Court.)

*Appeal from District Court, Pushmataha County;*
*Malcolm E. Rosser, Judge.*

Lyman Billy was convicted of manslaughter, and brings error. Affirmed.

*C. E. Dudley,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *Hiram A. King,* Sp. Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error, Lyman Billy, hereinafter referred to as the "defendant," was convicted of manslaughter in the first degree in the district court of Pushmataha county, on an information filed in said court December 21, 1910, charging him with the murder of Julius Hobson, on or about the 19th day of November, 1910. In accordance with the verdict of the jury he was sentenced to serve a term of ten years' imprisonment in the state penitentiary. The judgment and sentence was entered on February 18, 1911. To reverse the judgment the defendant prosecuted an appeal by filing in this court August 12th a petition in error with case-made.

The errors assigned are: First, the admission of improper and incompetent evidence; and, second, the refusal to give a requested instruction.

The circumstances under which the homicide was committed are, briefly, as follows: Julius Hobson, the deceased, David Charley, and Samson Jackson, on the day of the homicide, went to Sina Homer's house and passed by the defendant's house; it being about 200 yards from where they were going. The deceased's sister was staying at Sina Homer's, and he was trying to persuade her to go home with him when the defendant appeared and told her to come to his house. The parties concerned were Choctaw Indians. David Charley, who the evidence shows had been living in adultery with Martha Hobson, told her she had better go home with the deceased, as he was her brother. The defendant then pulled a pistol, and the deceased ran towards him and fell over the fence. David Charley then pulled a pistol and fired at the defendant, and the defendant fired back, shooting all his cartridges at David Charley and the deceased; David Charley also shooting at the defendant. No one was hit by any of these shots. During the shooting Martha Hobson ran away from the scene, going west. After the shooting the defendant went south 200 yards to his house. Before reaching his house he was overtaken by David Charley, who told him that it would be better to let the deceased alone, that he was drunk, and the defendant answered, "I am not making any trouble for you." David Charley then returned to where the difficulty first started, and with Samson Jackson and the deceased they went towards the west, thus going away from the defendant's house. All three were on horseback.

The testimony of C. M. Whatley, who lived on the defendant's place, and J. J. Matthews, who was there at the time, and who, we gather from the record, were not related to any of the parties to the difficulty, shows that the defendant went into his house and immediately came out with a Winchester, and went back to Sina Homer's house.

The evidence tends further to show that the defendant followed the deceased at least 200 yards before shooting him, and that the deceased was about 200 yards from him when he shot him. The evidence clearly established the fact that the defend-

ant was pursuing the deceased when he fired the shot, and that the bullet entered his back.

The defendant testified on his own behalf that he was a Gospel worker and that his wife was Martha Hobson's aunt. That David Charley tried to shoot him and he ran home. The record then shows his testimony as follows:

"Q. What did you do after you got home? A. I went in the closet of the house. Q. What did you get there, if anything? A. I was so excited and so scared that I do not know what I did get or what I was doing, but I found out I had a gun. Q. After you got that gun, did you shoot at anybody? A. The witnesses testify that I did, and I reckon I must have shot at him. Q. How far were you from your house when you shot? A. About 100 yards. Q. How far was Julius away from you when you shot at him? A. About 200 yards. Q. Was Julius walking or riding? A. He was horseback. Q. Did he get down off his horse after you shot? A. Yes. Q. Did he get down immediately, right where you shot? A. After I shot he went on about 200 yards, and I saw him get off his horse. Q. Why did you shoot at Julius? A. I knew that they would kill me or hurt me, and I was excited, also scared, and that is why I shot at him."

Coming now to the errors assigned: First, objection is made to the ruling of the court in permitting the state's witness David Charley, on redirect examination, to state, over objection of counsel for the defendant, that he had been convicted that morning for the part he took in the difficulty. Witness had just testified on cross-examination as follows:

"Q. David, you were convicted for hog theft in the Choctaw court and whipped, were you not? A. Yes, sir; I was whipped. Q. For hog stealing? A. Yes, I stole him and got whipped."

The record does not disclose for what offense witness was convicted that morning. So far as this court knows, it was beneficial to the defendant in tending to discredit the witness.

In support of this assignment, the case of *Rhea v. Territory*, 3 Okla. Cr. 230, 105 Pac. 314 is cited. In that case it was held that:

"Although evidence may be improperly admitted against the defendant, on account of which his conviction would be reversed, yet, if the defendant takes the witness stand and testifies to the

same thing, the error in receiving the other evidence will become harmless, and then will not be ground for reversal."

However, the court properly permitted this evidence to be received.

The second objection is made to the ruling of the court in refusing to let Martha Hobson, a witness for the defendant, answer the following question: "State to the jury how you happen to live with David Charley." On the state's objection, the following ruling was made: "The Court: Q. You can prove the actions of her brother at the time of the trouble, but it makes no difference how she commenced to live with David Charley. If her brother wanted her to live with David Charley in the beginning, or forced her to do so, it would make no difference now, or at the time of this transaction; but his conduct then is a proper matter for the jury." This evidence would not have been admissible under any rule. However, the defendant was permitted to prove by the witness that on the day of the homicide her brother wanted her to go back and live with David Charley.

The only other error assigned is based upon the action of the court in refusing to give a requested instruction as follows:

"If you believe from the evidence that deceased and David Charley ran defendant almost to his house, and that, when defendant secured his Winchester, deceased and David Charley retreated, and defendant believed that they were retreating with the intention of renewing the attack, you are instructed that the defendant had a right to pursue them and slay them if he were not acting in revenge, nor after his defense had ceased."

This instruction is clearly erroneous and was properly refused. It leaves out the question of imminent danger and the question as to who was the aggressor. The facts in this case could not have justified such an instruction. The undisputed facts are that, before defendant left his home after going there to get his Winchester rifle, the deceased and the other parties were riding away on their horses; that there was a contest between the deceased and the defendant over Martha Hobson, who during the difficulty at Sina Homer's house had run towards the west. While the defendant was going to his home the deceased had followed and overtaken Martha Hobson. The defendant

followed them far enough, after getting his Winchester, to see that the deceased was about to win out and get Martha Hobson to go home with him. He stopped and, taking deliberate aim, shot Julius Hobson in the back as he was fleeing from him.

It cannot be doubted, we think, that the testimony of the defendant alone warranted the jury in finding him guilty of manslaughter in the first degree.

Our conclusion is that the defendant had a fair and impartial trial and has nothing to complain of at the hands of the court or the jury.

The judgment of the district court of Pushmataha county is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concnr.