# GEORGE FOSTER v. STATE.

No. A-1878.    Opinion Filed June 29, 1914.

(141 Pac. 449.)

1.  **HOMICIDE—Threats—Appeal—Discretionary Ruling—Continuance —Motion.** (a) A motion for continuance is addressed to the sound discretion of the trial court, and the ruling of such court will not be disturbed by this court, unless an abuse of this prerogative on the part of the trial court clearly appears from the record.

    (b) A motion for continuance, in addition to showing proper diligence as required by law, and material facts expected to be produced by the witness, must contain allegations that would make the testimony of the absent witness competent.

    (c) A motion for continuance, based on the contention that absent witnesses would testify to certain threats, must, in addition, contain an allegation that the person seeking the continuance can make such testimony competent by other proof tending to show that the deceased was the aggressor in the difficulty.

    (d) Threats, either communicated or not communicated, are neither relevant nor material in the trial of a person charged with homicide, unless some evidence is first introduced tending to show that, at the time of the homicide, the accused acted in his apparent or necessary self-defense.

2.  **APPEAL—Verdict.** (a) When all the facts and circumstances introduced in evidence clearly establish the guilt of the accused, a judgment of conviction will not be disturbed by this court, in the absence of substantial errors of law.

    (b) See facts in opinion and contention of counsel quoted from their brief, which, in the judgment of this court, do not warrant a reversal.

3.  **HOMICIDE—Manslaughter—Excessive Punishment.** When a careful examination of all the proceedings incorporated in the record indicates an excessive punishment, this court will modify the judgment in the interest of substantial justice.

(Syllabus by the Court.)

*Appeal from District Court, Cleveland County;*
*R. McMillan, Judge.*

George Foster was convicted of manslaughter, and appeals. Modified and affirmed.

*B. F. Wolf* and *J. B. Dudley,* for plaintiff in error.

*Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

ARMSTRONG, P. J. The plaintiff in error, George Foster, was convicted at the July, 1912, term of the district court of Cleveland county of manslaughter in the first degree, and his punishment fixed by the court at imprisonment in the state penitentiary for a period of eighteen years. The information charged the accused with the murder of Eugene Edward Greenhaw in Cleveland county on the 6th day of December, 1911. The deceased was engaged in the livery business at Norman. The accused, a Chickasaw Indian, lived in McClain county. On the day preceding the homicide, the deceased had taken Katie Flanagan, who, it is contended, was a woman of questionable character, to the home of Mrs. Wolf, mother of the accused. On the same date the accused had a conversation with O. B. Knox, a deputy sheriff, and during this conversation told the deputy sheriff that he had run the deceased off the place. At the time he was drinking and appeared to be angry. He said that he had been having considerable trouble with the deceased, who, he contended, had been trying to run over him for quite a while, and that he intended to kill him if he bothered him any more. This was on the afternoon of the 5th; the killing occurring the next evening.

There was other evidence of ill feeling on the part of the accused toward the deceased and threats made by him against the deceased. About noon on the 6th day of December, the accused came to Norman in a buggy, went to the wagon yard, and left the team, a Winchester rifle, and an overcoat. Here he borrowed a knife to remove the cork from a quart bottle of whisky, and told the liveryman that he was going to Purcell, and ordered him to take care of the team and gun and overcoat until he returned. About 3 o'clock in the afternoon the mother and sister of the accused called at the wagon yard and got the team. Shortly afterward the accused came in and, on being informed that the team had already been taken away

by his mother and sister, got his rifle and coat and apparently employed Greenhaw, the deceased, to take him home. On the way they stopped at the home of O. B. Knox, the deputy sheriff, where the accused ate supper. At this time he was drinking heavily. About 6:30 on the same evening the accused and deceased left the home of the deputy sheriff. About 8:30 they passed the home of Peter Maphis, about two miles west of Norman. Shortly afterward Maphis and his sons, Henry and William, heard several shots. At first there was one shot, and a few minutes later two or three shots in rapid succession. Near the Maphis place there is a wooden bridge over which these parties heard the team run. They went out of the house into the yard, and the accused immediately came up, holding a Winchester rifle in his left hand, and said to Maphis, "I guess I killed somebody," and handed the rifle to him.

Henry Maphis testified that the accused said he had shot a fellow down there, and did not know whether he had killed him or not, but hoped he had; that he (the accused) wanted a statement written out; and that witness wrote out a statement, as dictated by the accused.

Dan Short testified that he was present at the time, and that the accused, among other things, said that deceased commenced cussing him and called him a son of a bitch, and threw him out of the buggy, and drew a gun on him and that he (the accused) grabbed the gun and shot the deceased in the neck.

Sheriff Sales testified that he had a conversation with the accused after he was brought to the jail on the night of the homicide, and that he told him that he and deceased got into a quarrel; that deceased was abusing Sheriff Sales, and that he (the accused), as Sales' friend, took it up; that during the fuss the deceased drew a gun on the accused and that the accused took hold of the gun and turned it back on the deceased, and that he thought he had shot him in the neck; that the team ran away; and that he did not know just where the deceased was hit. He said further that he believed he had killed the deceased and hoped he had. He seemed to be very angry at the time of this

conversation. Shortly afterward the sheriff and others went to the scene of the homicide, and found the body of the deceased. An effort was made to ascertain if any weapons were on the person of the deceased, but none were found. Several shots had taken effect in his coat. There was a wound in the left side and one in the arm. One bullet went into the body and upward into the cavity of the heart. The left side of the face was badly powder burned. There was a cut or gash on the right side of the forehead above the eye. Some cartridges and empty shells were found a short distance from the bridge. The Winchester rifle delivered by the accused to witness Maphis and the pistol delivered at the same time were both of 38 caliber. The chambers of the six-shooter were all empty when it was delivered to the sheriff, and its contents had not been changed after the accused handed it to Maphis. The pistol showed that it had been recently fired. An empty shell was found in the buggy and four shells in the pistol. The bullet taken from the heart of the deceased and compared with the shells used in the pistol and in the rifle showed that it came from the pistol and not from the rifle. The proof in the record indicates that the pistol belonged to the deceased and the rifle to the accused.

Counsel for the accused frankly confess that they seek no reversal of this judgment because of a lack of evidence. In fact, there was no defense made to the charge. Their contentions are based on alleged errors of law, only two of which we find it necessary to discuss.

First, it is contended that the court improperly overruled the motion for continuance. The motion for continuance is as follows:

"Comes now the above-named defendant, George Foster, and moves the court for a continuance of said cause to the next regular term of this court, for the reason that he cannot safely proceed to trial at· this time for want of material and necessary testimony, which the defendant, with due diligence, has been unable to procure.

"That if Boyd Pinn were present upon the trial of this cause, or his deposition taken, he would testify as follows: 'My name is Boyd Pinn. I am 23 years old. Reside in Mc-

Clain county, Okla. I am now and have been for two or three years last past acquainted with the defendant, George Foster, and was acquainted with the deceased, Ed Greenhaw, on December 6, 1911, the day he was killed, and had known him for two or three years prior thereto. That on December 5, 1911, I saw the deceased and one Katie Flanagan at or near the residence of defendant, George Foster, in McClain county, Okla., and I had a conversation with the deceased at or near the barn on the premises of the said defendant in which he said to me, "I have brought Katie Flanagan here today, and I understand that George Foster (the defendant) has said that she could not come back to her mother's home again, but I told her I would take her over there and see that George Foster did not run her off." That thereafter, and on the following day, to wit, December 6, 1911, in the afternoon of said day, I went into the horse lot of the said defendant on his premises, and met the deceased at or near the barn, and engaged in a conversation with him, in which I said: "Hello, Ed! I understand you did not keep George Foster (the defendant herein) from running Katie Flanagan off yesterday." To which he replied: "Yes, he (George Foster) got the best of me yesterday. He had the advantage of me, but I brought him over here to-day, and he is now in the house, and I am playing good to him to-day so that I may get in with him, and the first opportunity I am going to get even with the son of a bitch, and the first time he gives me a chance, I will fix him. I have the dope in my pocket to do it with." He then pulled a pistol out of his pocket and says, "Here it is." Shortly after this, the defendant, George Foster, came out to the barn from his house and said: "Ed (referring to deceased), I will catch my horse and ride over to Knox's, and you can take your team and buggy and go to the dance or home, as you like. I am going back to Norman to-night." Whereupon the deceased said: "No, you won't do anything of the kind. Come on and I will take you over to Knox's in the buggy, and then we will go to Norman together." And following the conversation the deceased and the defendant got into the buggy and rode off together towards Knox's.'

"If the witness Oscar Maxwell were present upon the trial of this case, or his deposition taken, he would testify as follows: 'My name is Oscar Maxwell. I am 25 years old and reside in McClain county, Okla. I am now, and have been for two or three years, well and personally acquainted with the defendant, George Foster. That on December 6, 1911, I was, and for a year or more prior thereto had been, acquainted with

the deceased, Ed Greenhaw. I am also acquainted with Katie. Flanagan. That on December 5, 1911, I saw the deceased, in company with said Katie Flanagan, in the neighborhood of defendant's residence in McClain county, Okla., at which time I had a conversation with the deceased in which he said: "I took Katie Flanagan (this woman here in the buggy with me) up to Susan's house (referring to the mother of the defendant) this morning, and she told me that George (referring to defendant) said that she (Katie Flanagan) could not come back on the place again, and that if she did there might be trouble." But the deceased said: "I don't care what they say, I am going to take her back up there this afternoon, trouble or no trouble. I am not afraid of George Foster or any other son of a bitch." '

"If the witness Fred Brunner were present upon the trial of this cause, or his deposition taken, he would testify as follows: 'My name is Fred Brunner. I reside in McClain county, Okla. I knew the deceased in his lifetime and am acquainted with the defendant, George Foster. That on December 6, 1911, the day of the killing, I had a conversation with the deceased at or near the residence of —— Knox, in McClain county, Okla., in which I asked the deceased if George Foster did not make him and Katie Flanagan leave his premises the day before, and he said: "Yes, he did. He had the advantage of me at that time and made me leave." I then asked him if he were afraid of Foster, to which he replied: "No, I am not afraid of him or any other man, and the first opportunity I get I will even the matter up with him; I fixed for him to-day, and I will even that matter up with him before to-morrow morning." And took a pistol from his pocket and showed it to me and said, "This is what I will fix him with." At that time the defendant had come up to the residence of Mr. Knox. This conversation occurred about dark on the evening of December 6, 1911. The deceased, Ed Greenhaw, at that time appeared to be considerably under the influence of liquor.'

"That if the witness Will Byers were present upon the trial of this cause, or his deposition taken, he would testify as follows: 'I reside in McClain county, Okla. I am acquainted with George Foster, the defendant, and was also acquainted with Ed Greenhaw in his lifetime. On December 6, 1911, I met the deceased, Ed Greenhaw, at or near the residence of defendant in McClain county, Okla., and in a joking way said to him: "I understand George Foster made you leave his mother's place yesterday." And in reply he said: "Yes, he did, but he will never do it again, and I am intending to get even with Foster the first good

opportunity, and I am prepared to do so." At this time he slapped his hand on his pocket and said: "Here is the dope for him." '

"If the witness George Jacobs were present upon the trial of this cause, or his deposition taken, he would testify as follows: 'My name is George Jacobs. I reside in McClain county, Okla., and am acquainted with George Foster, the defendant, and was also acquainted with Ed Greenhaw, the deceased, during his lifetime. That on December 6, 1911, the day of the killing, I met the deceased, Ed Greenhaw, at or near the residence of defendant in McClain county, Okla., and had a conversation with him in which the deceased said: "George, was there any eyewitness to the killing of Dr. Burford at Byars, Okla." And Jacobs replied: "No, Sam Fisher was close to the shooting, but there were no eyewitnesses." The deceased then said to me: "Well, George, you have been through the killing proposition, and I want your advice on a little matter." The deceased said: "Well, I got an Indian by the name of Foster. I guess you know him—George Foster. He has made two or three cracks at him, and he is a dam bad Indian, and I think the best thing I can do is just to get him out by himself so I can be the only witness to the affair myself, for I know that it is coming to a show down." I said to him: "Now, I have been through this trouble of being tried for murder. My advice to you is to leave the country before killing anybody. It is cheaper." Deceased then replied: "By God, I have never left any country, but I don't want to get in so deep that I can't get out, and, if there is nobody left to tell the tale but me, I ought to stand a pretty good show." '

"Defendant further states: That he cannot prove the above and foregoing facts by any other witnesses known to him. That said witnesses reside in McClain county, Okla., and are only temporarily away from home on a visit or business, and that the fact of their absence from home was not known to defendant, or his attorneys, until two days ago, and have just learned of their whereabouts. That the absence of said witnesses is due to no fault of the defendant and was not caused by the procurement, connivance, or consent of the defendant. That said witnesses are respectable, reputable law-abiding citizens of said county, and that they have a good, strong, personal appearance, and their presence in open court will materially aid the defendant in the trial of this cause. That the above statements of said witnesses are true and correct, as the defendant verily believes.

"The defendant further states that, if said cause is continued for the term or postponed for a reasonable time, he can procure the attendance of said witnesses or take their depositions.

"Defendant further states: That on July 3, 1912, being the 3d day of the July, 1912, term of this court, he caused an affidavit and praecipe to be filed with the clerk of this court, showing the residence of said witnesses and requesting that a subpoena be issued. The affidavit and praecipe are hereto attached, marked Exhibits A and B, and made a part hereof. That thereafter, and upon said day, subpoenas were issued by the clerk of said court for said witnesses, directed to the sheriff of McClain county, Okla. That said subpoenas, together with the sheriff's return thereon, are hereto attached, marked Exhibits C and D, and made a part hereof, showing that the witnesses Fred Brunner, Oscar Maxwell, Boyd Pinn, and George Jacobs could not be found in said county. That thereafter, and on or about the 18th day of July, 1912, and within a short time after the return of said subpoenas showing no service upon the witness George Jacobs, in McClain county, Okla., the defendant caused an affidavit and praecipe to be filed requesting that a subpoena be issued to the sheriff of Grady county, Okla.; he being advised that said witness George Jacobs might be found at or near Middleburg, in said county. The affidavit and praecipe so filed are hereto attached, marked Exhibits E and F, and made a part hereof. That thereupon, and upon said day, a subpoena was issued for said witness, directed to the sheriff of Grady county, Okla., but that the said sheriff has not made or filed herein his return upon said subpoena, and the defendant is unable to ascertain whether said witness has been served or not.

"The defendant further states: That, in the event your honor does not see proper to continue said cause for the term, the trial of said cause be postponed for a reasonable time so that he may have an opportunity to procure the attendance of said witnesses, or take their deposition. That this application is not made for the purpose of vexation or delay, but in order that justice may be done the defendant in the trial of this cause, and that he may be able to present his defense fully in said cause.

"Defendant further states that he has been incarcerated in jail since the date of the alleged killing of deceased, and on account thereof he has not had an opportunity to properly prepare his case for trial."

We are of opinion that this motion on its face does not come within the rule uniformly followed by this court. In the case of *Rhea v. Territory,* 3 Okla. Cr. 230, 105 Pac. 314, this court said:

"It is not enough, in an application for a continuance in a murder case, to allege that the defendant expects to be able to prove by the absent witnesses that the deceased threatened to kill the defendant; but the application should go further and allege that the defendant will be able to prove that, at the time of the homicide, the deceased, by some act then done, caused the defendant to believe that the deceased was then about to carry such threats into execution."

The motion does not contain any allegation that the accused would be able to prove that at the time of the homicide the deceased by any overt act there committed caused the defendant to believe that he was then about to carry out any threat theretofore made, nor was any proof offered at the trial by the accused that indicated that the deceased had committed any act of aggression.

In *Saunders v. State,* 4 Okla. Cr. 264, 111 Pac. 965, Ann. Cas. 1912B, 766, this court said:

"Threats made by the deceased are not admissible at all, unless there is first introduced some evidence, other than the threats themselves, tending to show that the deceased at the time he was killed was making some overt act or demonstration which furnished the defendant reasonable cause to believe that he was in danger of being killed or of receiving great bodily injury at the hands of the deceased."

In the same opinion the court further said:

"The law does not permit one to kill another merely because the other has made threats against him, and unless the deceased at the time of the fatal difficulty, without being willfully provoked thereto by the defendant, and without the defendant having sought the difficulty or having voluntarily entered into it, made some overt act or demonstration indicating to the defendant, as a reasonable man, an intention to kill him or to do him some great bodily injury, then any threats previously made against or communicated to the defendant are immaterial for any purpose in the case; and the jury should be so instructed. We therefore find no error in the instruction given. *Morris v. Territory,* 1 Okla.

Cr. 617, 99 Pac. 760 [101 Pac. 111]; *Reed v. State,* 2 Okla. Cr. 589, 103 Pac. 1042; Wigmore on Evidence, vol. 1, secs. 110 and 111."

In *Fraley's Case,* 4 Okla. Cr. 91, 111 Pac. 662, this court said:

"Furthermore, the killing being admitted, the reputation or character of the deceased and the matter of threats made by him, whether communicated or uncommunicated, are neither relevant nor material, unless some evidence is first introduced tending to show that the defendant acted in his real or apparent necessary self-defense, which has not been done in this case."

We are not prepared to say that the trial court committed reversible error in denying this application. There are always many facts and circumstances in connection with the trial of a case that cannot be made to appear from the record. The application was addressed to the sound discretion of the trial court, and that discretion having been exercised, and we, being unable to determine from the record that a contrary result would have been secured by a delay of the case, cannot say that the judgment should be reversed on this ground.

It is next contended by counsel that the court erred in giving certain instructions. The position of counsel, as stated in their brief, is as follows:

"The court, in giving these two instructions, and particularly instruction No. 6, places the burden upon the defendant to prove that he was not guilty, beyond a reasonable doubt, for he said in substance, in instruction No. 6, 'If you do not believe the defendant guilty, beyond a reasonable doubt, you should acquit him, after considering all the evidence,' thereby placing the burden upon the defendant to satisfy the jury, beyond a reasonable doubt, that he was not guilty, whereas it is the duty of the prosecution to prove the defendant guilty, beyond a reasonable doubt."

In support of this contention counsel cite, among other cases, *McGill v. State,* 8 Okla. Cr. 500, 129 Pac. 75. In this McGill case the instruction upon which reversal resulted was in the following language:

"If you believe from all the evidence, facts, and circumstances in the case, beyond a reasonable doubt, that he did have said liquors in his possession for his own use only, and not for the purpose of sale, or any part thereof, then you will find the defendant not guilty."

We are unable to see the application of the doctrine of the McGill case to the contention of counsel in the case at bar.

There are other assignments of error, among them assignments based on the admission of incompetent and immaterial testimony. A careful reading of the record discloses the fact that certain evidence, which had no bearing upon issues in the case on trial, was introduced, the character of which, however, was not sufficiently prejudicial to justify reversal in the light of all the facts disclosed by the record.

The jury failed to agree on the punishment, and the court, in fixing it, imposed a sentence of eighteen years in the state penitentiary. After a careful reading of the record, we are of opinion that the judgment is excessive, and that substantial justice requires that it be modified from eighteen years to ten years in the state penitentiary; sentence to run from date of the original judgment. As thus modified, the judgment, in our opinion, should be affirmed.

Affirmed.

DOYLE and FURMAN, JJ., concur.