LeRoy CARTER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12235.

Criminal Court of Appeals of Oklahoma.

Jan. 11, 1956.

Cecil E. Robertson and Paul Gotcher, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, LeRoy Carter, defendant below, was charged in the District Court of Muskogee County, Oklahoma, with the crime of burglary in the first degree after former conviction of a felony, 21 O.S.1951 § 1431 and § 1436 (defining burglary and punishment) and 21 O.S.1951 § 51 (second and subsequent offense). The crime was allegedly committed in Muskogee County on or about the first day of January, 1955. The defendant was tried by a jury, convicted, his punishment fixed, as a second and subsequent offender, at a term of ten years in the state penitentiary. Judgment and sentence was entered in accordance with the verdict of the jury; from which this appeal has been perfected.

Briefly, the information alleged that the defendant feloniously entered, in the nighttime, on or about January 1, 1955, the private dwelling house of Hallie Bledsoe, by breaking the lock on said dwelling house with intent to commit a crime therein, the said house being occupied by a human being and the entrance thereto being without the knowledge or consent of the said Hallie Bledsoe.

The defendant first urges the trial court erred in overruling his motion to quash the information. He contended in the motion, the information should be quashed for the reason the preliminary complaint alleged only the immediate offense of January 1, 1955, and contained no allegation as to a previous conviction of April 26, 1954. It is his contention that he was entitled to a preliminary hearing, not only on the felony allegedly committed on January 1, 1955, but also as to the previous conviction entered on April 26, 1954. This, he complains, was denied in violation of the Constitution of Oklahoma, Article 2, § 17 thereof, and other legislative enactments made pursuant thereto.

The state denies this contention and bases its argument on the proposition that 21 O.S.1951 § 51, in providing enhanced punishment for second and subsequent offenses, does not create or define a new or independent crime, but describes circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous conviction; that habitual criminality is a state and not a crime. Barger v. Burford, 93 Okl.Cr. 77, 225 P.2d 196; Johnson v. State, 79 Okl.Cr. 71, 151 P.2d 801. While we are in accord with the proposition that the second and subsequent offense statute, 21 O.S.1951 §

51, does not define an independent or separate crime, we do not believe that the authorities so holding are controlling on the question herein.

In considering this matter, at the outset we are confronted first of all with the provisions of Article 2, § 17 of the Bill of Rights to the Constitution of Oklahoma which reads:

"No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."

In 22 O.S.1951 § 251, we find it is provided, in part:

"When the defendant is brought before a magistrate * * * on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings, and also of his right to waive an examination before any further proceedings are had."

The question of the defendant's right to be informed in the magistrate's preliminary complaint that he must face the charge as a second or subsequent offender because of a prior conviction or convictions, is a matter of substance and not just form. Herein, in the complaint, the accused is charged only with burglary but not with being an habitual criminal; while the information herein, not only charges burglary in the first degree, but charges the accused as an habitual criminal. Hence, the case involves the fundamental right of the defendant as to the extent to which he is entitled to be informed in the preliminary complaint; that is, as to whether he is entitled to be informed not only as to the immediate basis thereof, but as to the possible punishment that may result from conviction therein as an habitual criminal. In short, is the accused entitled to be informed in the preliminary complaint of all the charges he will be compelled to meet at the time of the trial, as well as the limits of the punishment that may be imposed? We think he is.

How can the magistrate discharge the requirements of both Constitution and statute unless the complaint informs the accused of the immediate charge against him and of the seriousness of the penalty that may be imposed against him? The gravity of such an omission is apparent when measured by the fact that the accused, as an habitual criminal, may be compelled to suffer even life imprisonment. 21 O.S.1951 § 51, subd. 1. How can the accused intelligently waive a preliminary examination without being informed as to all the possibilities of the case? How can we preserve the substance as well as the letter of the Constitution and statutes on any other basis? How can we avoid the possibility that the defendant may, in a weak case, because of not being advised that he is to be charged as a second or subsequent offender, waive his valuable right to a preliminary examination and to aid of counsel? How can the accused be sure of the necessity for counsel if he is not fully complained against in the preliminary charge? In such a case where he has not been so informed, can it truthfully be said, in the absence of either a preliminary hearing or aid of counsel, that they were waived by the accused? There can be no waiver without essential knowledge necessary to establish both intent and that the waiver was voluntary. Waiver is never presumed without full knowledge of the facts. 92 C.J.S., Waiver, p. 1056.

Moreover, the accused has the fundamental right to presume he is fully complained against in the preliminary complaint, and cannot lawfully be held to answer a greater charge entailing more severe penalties. For example: A preliminary charge of manslaughter would not support an information for murder, nor a charge of second degree burglary one for first degree burglary unless the hearing before the magistrate develops the proof as to the more serious crime and an order is made holding the defendant to await trial on the more serious charge. In Rucker v. State, 88 Okl.Cr. 15, 191 P.2d 221, we held the county attorney is authorized to file an information against the accused, charg-

ing only the offense for which he was held, or substantially the same offense. We see no logical basis for any different rule in the case at bar. The charge of one as a second and subsequent offender, while not defining a new crime, is a classification defining the accused as a greater offender, enhancing the punishment that may be imposed, concerning which the defendant is entitled to be informed in the preliminary complaint. In no other way can an accused intelligently resolve the propriety of insisting on his constitutional rights.

Furthermore, a preliminary on a weak case may resolve the issue then and there. But, in the absence of a preliminary, aid of counsel, and full information as to the charge and its penalties, the accused may discover, all too late, that he may be tried and convicted on his past reputation, where the evidence of the immediate charge would not support conviction beyond a reasonable doubt. In some cases, where the prior offense is not alleged in the complaint, the prosecutor, in effect, may be able to work an entrapment of the accused by a pseudo-waiver of valuable rights, through an unjust application of law, and not through voluntary choice or intelligent election by the accused. Thus, the accused may be subjected to what we deem an unequal protection of the law.

The court must take the long view of cases of this kind. Procedure should not be approved in habitual criminal cases which may subject an accused to a conviction sheerly upon the basis of prior reputation. Where the evidence is insufficient, on preliminary hearing, to support probable cause, the accused, in the absence of intelligent waiver, has the right to be discharged for insufficiency of evidence by the committing magistrate. The accused should not, because of lack of information as to the possible penalties of his case, be compelled to speculate on what might happen in the trial or appellate courts, concerning that to which he has not been informed.

Furthermore, an accused is entitled to equal time with the state for preparation to meet the additional burden placed upon him in his second or subsequent offense charge.

In other words, the state should not be permitted to use the prior conviction charge as an amendment to the information as an element of surprise. To permit such to be done, in many instances, will subject strangers to a jurisdiction to unjust requirements. If it does not constitute an amendment of substance to the information, as contended by the prosecution, then such amendment could be made at the trial. Otherwise, it would certainly be improper and unfair. It is not always possible for persons in a strange community, and of the same name as a convict, to disprove an alleged identity where they are deprived of ample time so to do. Frustration could lead to unwarranted pleas of guilty, by strangers, upon threat of prosecution as an habitual criminal. To say such things could not happen would be to blind ourselves to the realities of life. The burden of enhanced punishment is sufficient without the approval of special procedure designed to make it easier for the state to obtain pleas of guilty in such cases. Therefore, we are of the opinion that to approve the procedure contended for herein by the state would establish conditions which could work denial of substantial rights guaranteed to the accused by the foregoing constitutional and statutory provisions. This holding will not work undue hardship upon the state in this age of rapid communication, F. B. I. rap sheets, and fingerprint identifications readily available to the prosecutor, nor will later acquired knowledge of prior conviction handicap the state. Of course it may cause some delay in the administrative process requiring the filing of a new or amended complaint, but what of it? When constitutional rights are involved, such matters cannot be lightly treated. We believe that these conclusions are in keeping with the concept of equal justice both to the accused and to the state.

That the state has a stake in this holding cannot be denied. Larger bail may be justified on a charge of second or subsequent offense as in many instances the punishment would be more than doubled. The preliminary hearing is conducted, among other things, for the purpose of determining the nature of the alleged of-

fense, the punishment that might be inflicted, and the amount of bail that would be required to secure a compliance with the recognizance entered into. It is not unreasonable to presume that greater bail should be required of a recidivist in order to insure his presence at the trial. Furthermore, if an accused is a repeater, that fact should be made known from the start and he should be prosecuted as such. From the standpoint of society, quoting from an eminent jurist in substance:

"There is one place only for a * * habitual criminal and that place is in the"[1]

penitentiary, to serve the full term of a sentence which his record justifies. But even such persons when accused as habitual criminals, are entitled to due process of law. This device for enhancement of punishment for repeat offenders should be made what it is intended to be, a protection for society and a deterrent to crime. In fact, when charged in the complaint, from the commencement of the prosecution and followed through to conviction, the charge of prior conviction becomes an instrument of weight on the scales of justice. But, when it is used as a device for the easy pleas, in avoidance of the trial, it constitutes a mere passing threat. County attorneys are urged to use it as a bulwark for public security. Hence, the state likewise has a vital interest in such matters being alleged and proven in the preliminary complaint and the hearing had thereon.

There is a dearth of authority on this specific point. 22 C.J.S., Criminal Law, § 333, p. 487, Note 55, 56. The state relies upon the case of Murphy v. State, 1937, 50 Ariz. 481, 73 P.2d 110. This case holds it is not necessary that the accused be advised at the preliminary hearing that he will be informed against as a recidivist. We cannot find any logical basis for such holding in our reasoning, and that case is supported by none. In People v. McDonald, 233 Mich. 98, 206 N.W. 516, we believe the rule is correctly stated:

"Without proof of former conviction at preliminary examination, no aver-

ment thereof can be made in information, and conviction based on second offense cannot be sustained." People v. Van Vorce, 240 Mich. 75, 215 N.W. 5.

The foregoing holding does not place us in the position of deviating from our prior holdings that the provisions of 21 O.S. 1951 § 51 do not define a new or independent crime, but merely provide that an accused may be more severely punished because of his previous conviction of another crime. Carr v. State, 91 Okl.Cr. 94, 216 P.2d 333, certiorari denied 71 S.Ct. 28, 340 U.S. 840, 95 L.Ed. 616. We are of the opinion that when the statute imposes a higher penalty on a convict because of previous conviction, the former conviction forms an essential element to be set forth in the information so the accused may be fully informed as to the offense intended to be punished. The prior offense enters into the immediate charge forming the basis of the prosecution calling for enhanced punishment and the two cannot logically be separately considered in the preliminary complaint and the information. Hence, our conclusion the accused is entitled to be informed of such matters, in the preliminary complaint, before he can intelligently determine the disposition he should make of his constitutional and statutory rights, herein before discussed; and before the magistrate can likewise intelligently protect the rights of the state on the matter of bail.

■ We are of the opinion the motion to strike the allegation of former conviction from the information should be sustained, where such allegation was not contained in the preliminary complaint, no proof of such fact was made at preliminary hearing and the order directing accused to be held for trial in District Court contained no directive that would serve as a basis for such allegation. Hence, the trial court erred in not sustaining the defendant's motion to quash.

■ The defendant's second proposition is predicated on the voir dire examination of the prospective jurors. The infor-

1. Case and Comment, "Probation and Parole from the Viewpoint of the Trial Judge," Sept.–Oct., 1955, p. 20.

mation had already been read informing the jurors that the defendant had sustained a prior conviction. The county attorney's voir dire examination consisted of lengthy inquiry of the prospective jurors as to whether they would inflict a more severe penalty against the accused, based on his prior conviction. 21 O.S.1951 § 51. The trial court attempted to check the county attorney, but the county attorney persisted in repeatedly reminding the jurors that the defendant, as a previous offender, could be given more severe punishment. The trial court attempted to allay the effect of the county attorney's prejudicial efforts to over-emphasize this point before proof, but his attempts at oral instruction to the jury may have amplified the situation. The evidence of guilt is so clear, however, this contention does not present adequate grounds for reversal. Nevertheless, it has been repeatedly held that unnecessary repetition of correct propositions of law are liable to give them undue prominence in the minds of the jurors, as certain features of the state's case, and thus affect their verdict. Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451.

■ The defendant's third contention is that the verdict of the jury was vague and indefinite as to the punishment and therefore insufficient on which to base the judgment and sentence. The verdict found "the defendant guilty of the offense of burglary in the first degree, after former conviction of a felony" and fixed the punishment "at confinement in the state penitentiary for a term of not less than ten years." The court sentenced the defendant to the minimum punishment of ten years. Hence, the defendant was not prejudiced herein by reason of the verdict. Nevertheless, we cannot say the verdict was of such import as to be certain, positive, and free from all ambiguity as to convey on its face a definite and precise meaning as to what the jury intended. Under the verdict, the court might have construed it to mean anything from ten years to life imprisonment. 21 O.S.1951 § 62 reads:

"Whenever any person is declared punishable for a crime by imprisonment in the penitentiary for a term not

less than any specified number of years, and no limit to the duration of such imprisonment is declared, the court authorized to pronounce judgment upon such conviction may, in its discretion, sentence such offender to imprisonment during his natural life, or for any number of years not less than such as are prescribed."

The only limitation contained in the verdict was that the penalty be not less than ten years. There was no limitation contained therein to the effect that the penalty imposed might not be more than ten years. Upon reading the verdict involved, the trial court should have required the jury to return and further consider the sentence they actually intended should be imposed. 22 O.S.1951 § 919, Smith v. State, 83 Okl. Cr. 392, 177 P.2d 523. It has been repeatedly held obscurity which renders a verdict at all doubtful will be fatal. Coe v. State, 86 Okl.Cr. 297, 192 P.2d 291.

This is not a situation such as was involved in Pruitt v. State, 94 Okl.Cr. 387, 236 P.2d 702, cited by the state, where the jury assessed the punishment at the minimum sentence. Hence, that case is not in point herein. It was therefore error for the trial court to receive the verdict in the form returned by the jury, over the objection of defense counsel, but not grounds for reversal since the defendant was not prejudiced thereby as he received only the minimum punishment.

■ Finally, the defendant complains that the county attorney insisted on telling the jury that if his office had not been certain of the defendant's guilt, the information would not have been filed. Expressions of the county attorney designed to create the impression that the county attorney would not have instituted the prosecution had he not been convinced of the defendant's guilt, should be avoided. Such expressions should not be used to influence the jurors, either to supply the lack of evidence or to make greater the weight of the evidence. Watson v. State, 7 Okl. Cr. 590, 124 P. 1101.

■ This case presents an unfortunate situation, for the evidence of the defend-

442

ant's guilt is clear and conclusive. Moreover, we take judicial notice of our own opinions. Coburn v. State, 78 Okl.Cr. 362, 148 P.2d 483; Ex parte Collins, 76 Okl.Cr. 163, 135 P.2d 61. On January 26, 1955, in Carter v. State, Okl.Cr., 279 P.2d 956, we affirmed a judgment against this same defendant for the prior conviction herein involved, committed on July 25, 1953. The facts involved in that case are similar to those involved herein. But, regardless of the defendant's guilt and his prior conviction, he is entitled to the same fair trial that should be accorded any other defendant. Under the situation herein presented, we cannot say this defendant has been accorded such treatment. Therefore, the judgment and sentence is vacated and the case reversed and remanded for a new trial in accord with the principles hereinbefore set forth.

JONES, P. J., concurs.

POWELL, J., concurs in conclusion but dissents as to paragraph 4 of the syllabus.