Leonard Joe BAKER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14377.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1967.

Jay Dalton, Tulsa County Public Defender, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Jerry H. Holland, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Plaintiff in error, Leonard Joe Baker, hereinafter referred to as the defendant, was charged in the District Court of Tulsa County with the crime of Unauthorized Use of a Motor Vehicle, After Former Conviction of a Felony. He was tried by a jury, found guilty, and sentenced to seven years in the penitentiary.

Defendant did not have funds to hire his own attorney, and the District Court appointed Robert B. Ardis, the public defender for Tulsa County (*in 1963*), assisted by Thomas Newhouse, to represent the defendant at the trial. After judgment and sentence was rendered, the public defender filed a motion for new trial, and gave notice of intent to appeal. However, defendant's appeal was never perfected to this Court, and on March 2, *1967,* the defendant filed an application, pro se, for Post-Conviction Appeal as authorized in Title *22,* O.S.A. § 1073. On April 25, 1967, a hearing was held in this Court, and after a presentation of the facts, this Court ordered the District Court of Tulsa County to prepare a casemade at public expense, to appoint an attorney to represent defendant on appeal, and granted defendant's Post-Conviction Appeal.

Subsequently, the casemade was prepared, and Jay Dalton, the public defender for Tulsa County at the present time was appointed to represent the defendant in perfecting his appeal. This Court heard oral arguments on the appeal September *27,* 1967; *and because of the lapse of time since the conviction, have advanced this cause for immediate opinion.*

The facts of the case, as recited briefly in the Brief of Plaintiff in Error, are as follows:

The state's first witness was Officer E. J. Neely of Ponca City, Oklahoma. Mr. Neely testified that on the morning of May 1, 1963, he had an occasion to be at 5181½ West Chestnut in Ponca City, Oklahoma, and that he had a conversation with a Miss Kent, at that address, regarding a 1959 Plymouth automobile, which had allegedly been stolen and parked in the alley behind Miss Kent's garage apartment. The officer testified that Miss Kent told him that a Leonard or Leonard Joe was driving the vehicle. The state's second witness was Loretta Sue Kent. Her testimony was that Leonard Joe Baker had been driving the 1959 Plymouth on the day of May 1, 1963. There was the usual testimony from the owner of the automobile; that the defendant did not have permission to operate the automobile and further that on April 30, 1963, the automobile had been stolen. Mr. Billy J. Jones, an officer for the Tulsa Police Department, testified on behalf of the State that on the afternoon of May 1, 1963, he had an occasion to locate the vehicle parked approximately one block from the courthouse. He and another officer arrested the defendant that afternoon when the defendant got in the automobile.

The defendant's defense relied mainly on the testimony of a Mr. Ferrell Gene Knight. Mr. Knight testified that he was with the defendant on the night of April 30, 1963, at a club in Tulsa County known as the Admiral Club on East Admiral. His testimony was to the effect that the defendant stated during the course of the evening that he would like to go to Ponca City and visit some friends. Inasmuch as the defendant did not have an automobile at the time, a friend of Mr. Knight's, by the name of Buddy Epperly, agreed to transport them to Ponca City. That Mr. Epperly was driving the Plymouth in question. That when the defendant was arrested at the courthouse on the afternoon of May 1, 1963, Mr. Epperly had driven the defendant and Mr. Knight to the courthouse, and that defendant did not at any time know or have reason to be-

lieve that the automobile had been stolen. From these facts, defendant raises four assignments of error on appeal.

The first being that the trial court erred in overruling the objection of the defendant to the introduction of evidence to which ruling the defendant duly excepted. It is the defendant's contention that the former convictions which were introduced in the second stage of the proceeding were inadmissible and that the trial court erred in allowing these exhibits into evidence as they had not been properly identified before their introduction.

 From the record, it appears that the county attorney introduced three informations and three judgments and sentences from Texas County and one judgment and sentence from Seminole County to prove the former convictions. There was never any evidence or testimony as to the identity of the defendant being the same person as shown on these documents, and defense counsel objected strenuously due to the name on one of the cases being shown as *Joe Leonard* Baker; while all the rest were shown as *Leonard Joe* Baker.

This Court has held consistently and repeatedly, that:

"The identity of the accused in the case must also be established on trial as one and the same person as that convicted of the prior offense. Woods v. State, Okl. Cr., 327 P.2d 720; Pitzer v. State, 69 Okl. Cr. 363, 103 P.2d 109; Clore v. State, Okl.Cr., 282 P.2d 780."

See, also, Gilmore v. State, Okl.Cr., 365 P. 2d 573:

"A certified copy of the judgment and sentence without proof of identity is not sufficient to establish the conviction of the defendant."

And, this Court held in the 1964 case of Bean v. State, Okl.Cr., 392 P.2d 753:

"The Habitual Criminal Act, Title 21 O. S.A. § 51, was designed solely for the purpose of enhancing the punishment of those convicted of a felony after having been previously convicted of a peniten-tiary offense. Providing for increased punishment in such cases was its only purpose. To permit any testimony or evidence *as to the details* of the former convictions * * * tends to place too much inference thereon and tends to further prejudice the defendant.

The information *should not* be a part of this record as it tends to describe the crime in detail. It was said in the case of Ervin v. State, Okl.Cr., 351 P.2d 401:

'Introduction of the information for examination by the jury would serve no purpose but to advise the jury of the details of the crime constituting the former conviction. What would be accomplished to hold inadmissible evidence as to the details, then present to the jury for examination the information which recites all the details of the former conviction. It would be allowing indirectly that which would be directly prohibited. The information does not prove the conviction but only that a charge was filed. * * * The information is in no manner proof of a former conviction.'

We are not ruling out the method of bringing the prison records clerk, with the judgment and sentence; nor the method herein used of the fingerprint cards as identification."

This Court is of the opinion that there was not proper identification of the defendant with reference to the former convictions introduced; and that, further, the information should not have been presented to the jury for proof of former convictions.

Defendant's second contention of error is that the verdict was a result of coercion by the Judge by his remarks to the jury, to which the defendant duly excepted. The record reflects that after the jury had retired for deliberation they returned into open court, and the following statements were made by the trial judge. On page 125 of the casemade, Mr. Newhouse, in making his record, stated the following:

"The remarks which are of record in this case and to which the defendant is

here objecting are those in which the Court stated that the jury could be held in deliberation for a maximum of four days. Further, that the jury would be locked up for the night with a male and female bailiff to continue their deliberations, and further remarks indicating to the jury that the Court desired that they return a verdict one way or the other due to expense to the State of trial proceedings and further due to witnesses from out of county involved in this trial; and any other and all remarks made by this Court to this jury at the times aforementioned."

This Court has long frowned on any remarks made by a trial judge which might be interpreted as attempting to coerce a jury to render a verdict; and have been very quick to condemn conversation between judge and jury, especially where it is of such nature as to leave inferences that are subject to different interpretation.

■ See the case of Sowle v. State, Okl.Cr., 424 P.2d 993, handed down March 8, 1967, wherein this Court stated:

"Not every improper remark justifies reversal, but if said remarks are such that cause a doubt as to whether defendant was prejudiced by said remarks, that doubt should be resolved in favor of the defendant."

"Since jurors are prone to place much credence upon remarks of trial judge, and his position merits said respect, he should refrain from making remarks that might be interpreted as coercion upon the jury."

Also, see Calhoun v. State, Okl.Cr., 406 P.2d 701, wherein the Court said:

"It is not improper for trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is reasonable probability of reaching a verdict and to inquire of the likelihood of them doing so. *However, the court must exercise great caution to say nothing tending to coerce an agreement, to indicate his feelings in the case, or to invade the province of the jury.*" (emphasis ours)

See, also, Spomer v. State, Okl.Cr., 395 P.2d 657.

The attorney general, in their brief, attempts to evade the issue by stating that the alleged remarks were made after the Court had been advised by the foreman that a verdict was possible in the case. This simply is not consistent with the recited remarks of the trial court, supra. If the jury had stated they were able to reach a decision, there was *no* occasion for any of these remarks. The only purpose these statements could have served, would have been to coerce the jury and prejudice the defendant.

■ Defendant's third contention of error is that the trial court refused to instruct the jury as requested by this defendant's requested instruction to which he duly excepted.

This Court will not go into a lengthy discussion of this issue, other than to state that the defendant was entitled to an instruction to the jury on his theory of defense, in this instance, that of alibi. There are cases too numerous to cite wherein this Court has ruled on this question of theory of defense; and we will proceed to the next, and most important, assignment of error.

■ Defendant alleges in his fourth, and last assignment of error, that the verdict of the jury was a result of passion induced by a bodily search of the defendant for weapons prior to the selection of the jury, but in the presence of four (4) members of the jury panel. At pages 23–24 of the case-made, on the first day of defendant's jury trial, the following proceedings were had in the judge's chambers:

"MR. ARDIS: Comes now the defendant, Leonard Joe Baker, and moves the Court for a continuance on the three charges set on this December docket, on the ground that the defendant, while four male jurors were within the Courtroom, in front of all the jurors within the

Courtroom, was completely searched for weapons, and that by so doing the defendant has been prejudiced in his right for a fair and impartial trial on this jury docket.

MR. FALLIS: If it please the Court, I would like for the record to also reflect that this incident, if it occurred, occurred prior to the calling of the case, and prior to the time any jury was impaneled in any of the three cases against Leonard Joe Baker, and after Judge Raymond W. Graham had made inquiry in the Courtroom as to whether or not any prospective jurors were present in the Courtroom, and had asked that they excuse themselves.

MR. ARDIS: To correct the record—

THE COURT: They contend it happened before we went in on the bench.

MR. ARDIS: This was before and not after.

THE COURT: Before Court had convened.

MR. ARDIS: That's right, this was before Court convened, and was prior to the time the Judge inquired if there were any jurors present in the Courtroom, and at the time the Judge inquired, four men raised their hands and left the Courtroom immediately, and that this was subsequent to the searching of the defendant.

THE COURT: Your request for continuance is denied.

MR. ARDIS: Thank you.

THE COURT: Exception allowed."

The defendant cites case-law in his brief relating to the statute on "chains and shackles", Title 22, O.S.A., § 15; and urged on oral argument the recent decision of this Court, Moore v. State, Okl.Cr., 430 P.2d 340 (July 19, 1967).

The case relied upon by the State in their brief, DeWolf v. State, 95 Okl.Cr., 287, 245 P.2d 107, is completely out of point, out of date, and without merit.

The portion of the statute relating to chains and shackles cited above was passed as a *direct result* of the DeWolf case, supra—in order that, *never again*, could a defendant be tried for any crime without the full use of his faculties and *with the presumption of innocence the law allows.*

The decisions of this Court following the enactment of this Statute have never wavered, but follow the wording of the statute explicitly.

 While this Court does not herein rule *conclusively* that a search of a defendant in a courtroom would fall within this statute, or is automatically reversible error, we will have to judge each case on their individual circumstances.

However, as in the instant case, wherein some of the jury witnessed the search of defendant for weapons by the officers, it could not have helped the defendant in any manner and most definitely would have implanted some prejudice in the minds of the jurymen against the defendant.

 Further, we would make this point very clear. We are not stating that a defendant cannot be searched for weapons to secure the safety of the judge and other members of the court. But, that the *place defendant is searched should be out of the courtroom; and most particularly, out of any contact with prospective or impaneled jury members.*

The Tulsa County Jail, with its modern facilities, can provide an adequate place for this search to take place. Or, it can be conducted, if necessary, in an anteroom out of the presence of witnesses and jury.

This Court is of the opinion that this would fall within the scope of the Moore case, supra; wherein the jury trying the case was conducted on a tour of the jail during a recess in the defendant's trial, and there observed said defendant behind bars with the other prisoners. We ruled in that case that the impact upon the jury was more prejudicial than beneficial.

In an appeal that had been timely filed in this Court, this record would constitute reversible error; however, due to the length of time since judgment and sentence,

we feel that, in the interest of justice, this judgment and sentence should be modified instead of reversed and remanded.

It is, therefore, the order of this Court that the judgment and sentence in Tulsa County District Court case number 20,051 be MODIFIED from Seven (7) Years to a term of Two (2) Years in the penitentiary, and as so modified, the judgment and sentence appealed from, is Affirmed.

This Court commends Mr. Jay Dalton, Public Defender from Tulsa, Oklahoma, for the excellent brief and oral argument presented in this cause, and the promptness with which he carries forth his duties.

Modified and affirmed.

BUSSEY and BRETT, JJ., concur.