Benjamin BREWER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–609.

Court of Criminal Appeals of Oklahoma.

Aug. 18, 1982.

As Corrected Aug. 20, 1982.

---

Frank W. McCarthy, Deputy Chief Public Defender, Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Benjamin Brewer, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, Case No. CRF–78–2137, for Murder in the First Degree, pursuant to Laws 1976, ch. 1, § 1, now 21 O.S.1981, § 701.7. He was sentenced to death by the jury.

The facts in this case are relatively simple. Karen Joyce Stapleton was found dead in her Tulsa apartment on August 17, 1978. Examination of the semi-nude body revealed that death had occurred on or around August 16, 1978, as a result of twenty (20) stab wounds. The appellant was arrested on August 19, 1978, for the murder. He made three separate statements to Tulsa police officers in which he confessed killing Karen Stapleton and directed them to the location of her car, which he had stolen and hidden.

Unfortunately, the appellant's right to a fair trial was the victim of an overzealous prosecutor. The record is replete with error committed during both stages of the trial, which when considered in a cumulative fashion, necessitates that the conviction be reversed and remanded for a new trial. Because of the result reached in this decision, we need only address those issues pertinent to our reasons for reversal, and to those affecting the re-trial.

We turn first to the factor contributing the most weight to our decision to reverse the appellant's conviction: the overzealous conduct of the prosecuting attorney. The prosecutor in this case embarked on a campaign of prejudicial theatrics which doubtless resulted in unfair prejudice to the appellant. The following examples illustrate, though certainly do not exhaust, the prosecutor's erroneous conduct at trial.

1) As he was cross-examining the appellant's expert witness concerning the appellant's insanity defense, the prosecutor stabbed State's Exhibit Number 10 (a 16 inch by 20 inch photograph of the deceased victim's body as it was found at the murder scene) four separate times with the knife used in the murder. Although we recognize that the prosecutor's range of free speech and illustration is wide, *Wright v. State*, 617 P.2d 1354 (Okl.Cr.1979), this policy does not contemplate such outrageous behavior. It is impossible to attribute any probative value whatsoever to the prosecutor's actions. The episode went entirely outside the scope of the record and was designed purely for its unfair prejudicial impact on the jury. This conduct was impermissible.

2) At another point the prosecutor ridiculed the defense attorney's objections before the jury:

MR. FALLIS; . . . so we know there is testimony in this case now, testimony of your own client—

MR. BURNS: Objection, Your Honor.

MR. FALLIS: It's in this statement.

MR. BURNS: Ask that the jury be admonished to disregard it and move for a mistrial.

MR. FALLIS: So help me God is what he said, so help me God—

MR. BURNS: Mr. Fallis, I have an objection—

MR. FALLIS: That's what happened, he didn't say 'I don't know what happened.'

MR. BURNS: I have an objection before the Court.

MR. FALLIS: Object, object, when it gets tight, he starts objecting.

MR. BURNS: Object to his comment now and ask that the jury be admonished

to disregard it and move for a mistrial and ask that he be admonished.

THE COURT: Motion denied.

MR. FALLIS: Isn't that interesting. They stood before you during the opening statement, they stood before you during the voir dire, 'we are not going to contest that the death was occasioned by Ben Brewer'; and we have been prolonging this trial, running back and forth like a yo-yo to the bench making records, objecting to everything that ever happened in this courtroom.

MR. McCARTHY: Your Honor, we object—

MR. FALLIS: Rather inconsistent, isn't it?

MR. McCARTHY: We object to counsel's comments concerning matters of law. That's up to the court.

THE COURT: I'll sustain the objection, concerning the approach to the bench.

MR. McCARTHY: I would ask that the jury be—

MR. FALLIS: Thank you, Your Honor.

MR. McCARTHY: Would you admonish the jury?

THE COURT: They are so admonished.

The prosecutor's conduct of not allowing defense counsel an opportunity to be heard on his objections, coupled with the needless ridicule demonstrate a lack of respect for the appellant's constitutional right to a fair trial which this Court shall neither tolerate nor condone. See generally, *Chandler v. State*, 572 P.2d 285 (Okl.Cr.1977). We cannot say that the trial court's statement "They (the jurors) are so admonished" was sufficient to cure the error.

3) During the sentencing hearing, the prosecutor twice referred to the possibility that, if acquitted, the appellant would commit similar crimes in the future. This line of argument is highly improper. It is error to comment on the possibility that a defendant may commit crimes in the fu-

ture.[1] See, *Hager v. State*, 612 P.2d 1369 (Okl.Cr.1980); *Lime v. State*, 479 P.2d 608 (Okl.Cr.1971).

4) The prosecutor told the jury during the sentencing stage that the homicide rate in Oklahoma had increased 28 percent, and that although juries were imposing the death penalty, no one had been put to death since 1966. We have held numerous times that references to the crime rate are improper because they present matters extraneous to the evidence and tend to impose responsibility on the jurors for the rising crime rates. *Hager*, supra; *Coats v. State*, 589 P.2d 693 (Okl.Cr.1978); *Cooper v. State*, 584 P.2d 234 (Okl.Cr.1978).

The above remarks and other similar comments amply support the appellant's contention that he was denied a fair trial.

The appellant's next contention that certain evidence should have been excluded from the trial pursuant to a motion in limine presents a troublesome issue. In one of his statements to the police, the appellant admitted that he gained entrance into the victim's apartment by first breaking into an adjacent apartment and crawling through a common attic-way. The judge sustained the appellant's motion in limine to delete that portion of the confession. During the hearing on that motion, the prosecutor agreed to the deletion, stating:

> When taken as a whole I can see no relevance to the entry into the apartment next door at this time and I can find no exception for its use as evidence in this case, so we have no objection to the court granting that motion and we would join in the motion and the only thing left, of course, is the physical aspect of extracting that from the confession, so however counsel wants to go about that, we'll be glad to join in that.

During the trial, the State introduced evidence which demonstrated that the ap-

---

1. We note that under 21 O.S.1981, § 701.12(7), the propensity of a defendant to commit future crimes may be used as an aggravating circumstance to justify imposition of the death sentence, if listed in the bill of particulars. In the present case the State failed to do so. If the prosecutor wishes to properly make such an argument on retrial, the statutory provisions must be complied with.

pellant may have broken into the apartment adjacent to the victim's.[2,3]

■ The prosecutor complied with the motion to the extent that no references to the deleted portion of the appellant's confession were made. However, the prosecutor accomplished the same result that the motion in limine was designed to prevent by introducing the evidence described above. Thus, although we do not accuse the prosecutor of going back on his word, we urge that the better practice on retrial will be for the prosecutor to either 1) not join in such a motion, and then to follow the procedure outlined in *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979) to introduce the appellant's acts of breaking in; or 2) to join in the motion and delete all references to the breaking in.[4]

■ The appellant further complains that the prosecutor improperly introduced evidence of other crimes in his trial. There was evidence which indicated that the appellant stole the victim's automobile, purse, and dog. The presence of semen in the victim's vagina led the prosecutor to infer throughout the trial that the appellant raped her. Because of the manner of disposition of this case, we need once again only remind the prosecutor of the guidelines established in this State for the introduction of other crimes at trial. If the State wishes to use the evidence, the appropriate measures must be taken to ensure the appellant is forewarned.

We turn now to issues not affecting our decision in this case, but nonetheless pertinent to retrial.

■ In his eighteenth allegation of error, the appellant claims the trial court erred in failing to sustain his demurrer to the information. The information adequately met the requirements of 22 O.S.1981, § 401. The appellant was not misled as to the charges against which he had to defend himself, neither was he exposed to the possibility of being placed in jeopardy a second time for his offense. *Holloway v. State*, 602 P.2d 218 (Okl.Cr.1979). The trial court did not abuse its discretion in overruling the demurrer.

■ The next issue concerns the introduction of photographic reproductions of the victim's body and wounds at trial. We find no error in the introduction of eight color slides depicting specific wounds on the victim's body. The photographs were taken at the morgue after the body had been cleansed. They served to illustrate the testimony of the medical examiner. See, *Bills v. State*, 585 P.2d 1366 (Okl.Cr.1978).

■ We also find no error in the introduction of a 16 inch by 20 inch black and white photograph of the victim's body as it was found at the murder scene. The photograph is admittedly gruesome in nature, however the occasioned death was a gruesome deed. The photograph accurately and faithfully represented the scene as it was found by Tulsa police officers. *Pate v. State*, 361 P.2d 1086 (Okl.Cr.1961). It was used by the medical examiner to illustrate and explain his findings to the jury. See, *Deason v. State*, 576 P.2d 778 (Okl.Cr.1978). The photograph had probative value which substantially outweighed any prejudicial impact it may have had on the jury. 12 O.S.1971, § 2403.

We have stated numerous times that the admission of photographic evidence rests within the discretion of the trial court. *Collins v. State*, 561 P.2d 1373 (Okl.Cr.1977). We will not overturn the trial court's deci-

---

**2.** The evidence consisted of a portion of the wall of the apartment adjacent to the victim's which contained a fingerprint matching the appellant's; photographs of fingerprints matching the appellant's which were also found in that apartment; testimony concerning those fingerprints; and evidence concerning the possibility he crawled through the attic-way.

**3.** It should be noted that the judge who allowed the evidence to be introduced was one other than the judge who presided over the motion in limine.

**4.** We emphasize that the motion in limine is not binding on the retrial of this case. We leave to the trial court the decision whether to delete that part of the appellant's confession, should the issue again be raised.

sion absent abuse of that discretion. *Grizzle v. State*, 559 P.2d 474 (Okl.Cr.1977). As the photograph had probative value which substantially outweighed its prejudicial nature, we find no such abuse.

■ We find next that the appellant's arrest was lawful, and the evidence and confessions obtained pursuant thereto admissible at trial. At the time of the arrest, the Tulsa police knew:

1. That a homicide had been committed;

2. That the victim's automobile and small white dog were missing;

3. That the appellant had been identified by a security guard as the man who was driving an automobile matching a description of the victim's automobile and who was in possession of a small white dog in the early morning hours of the murder (the security guard had engaged in a short conversation with the appellant, and identified him from several photographs for the police prior to the arrest);

4. That the appellant was well-known in the area of the victim's apartment and had once lived in that vicinity;

5. That a female who was known to one of the Tulsa detectives but wished to remain anonymous telephoned the Tulsa police and informed them they should "look at" the appellant in the homicide.

This information, collectively considered, would warrant a prudent and reasonable police officer's belief that the appellant committed the offense. *Copling v. State*, 600 P.2d 353 (Okl.Cr.1979); 22 O.S.1981, § 196.

■ Two of the appellant's assignments of error concern his attorney's unsuccessful attempt to enter a guilty plea to the first degree murder charge at the 1978 arraignment. The judge refused to accept the plea and allowed the State to file a Bill of Particulars to enhance the potential punishment to death, pursuant to 21 O.S.1981, §§ 701.10 and 701.12. The appellant filed an application for issuance of writ of prohibition and/or mandamus with this Court ordering the judge to accept the guilty plea and sentence him to life imprisonment.

This Court denied the application on December 7, 1978, reasoning that the judge was not obligated to accept the guilty plea because the appellant did not personally and orally enter the plea as required by 22 O.S.1981, § 516 and *Dukes v. Page*, 457 P.2d 837 (Okl.Cr.1969), Order No. P–78–593.

We now reaffirm our holding, noting that a defendant does not have a constitutional right to have a guilty plea accepted by the court. *Stewart v. State*, 568 P.2d 1297 (Okl. Cr.1977).

In addition, although *Dukes*, supra, is factually distinguishable from this case in that the appellant was present at the arraignment, whereas the defendant in *Dukes*, was not, the reasoning behind *Dukes* is applicable. In *Dukes*, we held that guilty pleas must be entered personally and orally so the trial court can be satisfied that the defendant understands and appreciates the consequences of his plea, and that the defendant is competent to enter such a plea. This holding applies as well to a defendant who sits mute at the defense table as it does to one who is absent. Since the appellant did not personally and orally enter the plea, the judge could not have accepted it.

■ The appellant challenges several instructions given by the trial court to the jury. Instructions concerning murder and reduction to lesser degrees of homicide were properly given. Numerous cases have held that murder may be reduced to manslaughter. *Davis v. State*, 524 P.2d 46 (Okl.Cr. 1974); *Rhea v. Territory*, 3 Okl.Cr. 230, 105 P. 314 (1909). Indeed, numerous cases have held that it is the *duty* of the trial court to determine whether there is evidence to warrant a reduction of a charge of murder to a lower degree of homicide, and, if so, instruct the jury accordingly. *Hanna v. State*, 560 P.2d 985 (Okl.Cr.1977); *Gibson v. State*, 501 P.2d 891 (Okl.Cr.1972).

■ The trial court also correctly instructed the jury not to consider sympathy in the second stage of the bifurcated trial. The appellant construes the sympathy instruction to be a barrier to the jury's con-

sideration of any mitigating circumstances presented. We cannot agree that the instruction had such an effect. The jury was expressly instructed to weigh the mitigating circumstances in determination of the severity of the sentence to be imposed.

In addition, 21 O.S.1981, § 701.13(C)(1) requires this Court, in reviewing the death sentence to determine whether it was imposed under the influence of passion, prejudice or *any other arbitrary factor*. The trial court's instruction against sympathy was designed to prevent "arbitrary" influences such as sympathy for the victim or her family from affecting the jury's decision.

█ The appellant's nineteenth assignment of error alleges that a preliminary hearing on the bill of particulars should have been held. The appellant argues that since a preliminary hearing is required in all after former conviction of felony (AFCF) cases, the same requirement should be had in capital cases.

We reject this argument for two reasons. Initially, title 21 O.S.1981, § 701.10, does not provide for a preliminary hearing on a bill of particulars filed in a first degree murder case. If the legislature had intended such a procedure, it presumably would have so stated in the statute.

Secondly, the leading case which espoused the fundamental right to preliminary hearings in AFCF cases, *Carter v. State*, 292 P.2d 435 (Okl.Cr.1956), cited by the appellant, is distinguishable from the cases brought under 21 O.S.1981, §§ 701.10 et seq. In *Carter*, we held that a preliminary hearing on AFCF charges is necessary because a defendant has a right to be informed of all possible punishments which he faces upon conviction of a certain offense. The enhanced penalty is not reflected in the particular statute defining the crime with which one is charged, thus the only way for a defendant to be informed of the potential enhanced penalty is through the preliminary hearing. However, 21 O.S.1981, § 701.9, states that, "A person who is convicted of or pleads guilty or nolo contendre to murder in the first degree shall be pun-

ished by death or imprisonment for life." Thus, a defendant charged with first degree murder in Oklahoma need only consult the statute to ascertain all possible penalties he faces.

In addition, 21 O.S.1981, § 701.10 specifically states that, "Only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." This provision removes all possible surprise or uncertainty concerning the nature of the potential penalties from the sentencing stage of the trial. It is apparent that there is no need for a preliminary hearing on the bill of particulars in capital cases.

Lastly, we address the appellant's arguments that the State improperly proved both aggravating circumstances in the sentencing stage of his trial. He first argues that evidence improperly introduced in the first stage was erroneously incorporated into the second stage when the State relied on that evidence to support the contention that the murder was especially heinous, atrocious and cruel. Due to the fact that this case must be remanded for a new trial, we need not discuss all the error alleged concerning this matter. Suffice it to say that we presume the second trial will be conducted properly, thus the error alleged herein should be alleviated.

█ We cannot agree with the appellant's second argument that the aggravating circumstance alleging he had previously been convicted of a felony involving the use or threat of violence to the person was improperly proven. The State offered as evidence to prove the aggravating circumstance the judgment and sentence of the appellant's 1976 rape conviction, the information charging him with that crime, and the limited personal testimony of the victim. He argues initially that the State informed him the prior conviction would be proved only by the use of court records. It must be noted, however that during the pre-trial arguments concerning this matter the prosecutor informed the judge and the appellant that he reserved the right to call

witnesses to support the allegation, and would provide the appellant with names and addresses should he decide to call them. The appellant later conceded that he had received an endorsed list of witnesses in which the name of the victim was included, and that he knew why her name was listed. Thus, the State complied with the statutory mandate of 21 O.S.1981, § 701.10 that, "Only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." The evidence was timely made known, and the appellant was not surprised thereby.

■ The appellant additionally argues that the State should not have been allowed to go behind the judgment and sentence of the rape conviction to prove that he had been previously convicted of a felony involving the use or threat of violence to the person. The appellant argues that neither the information charging him in that case nor the testimony of the victim should have been allowed into evidence during the sentencing hearing. He cites *Baker v. State*, 432 P.2d 935 (Okl.Cr.1967) to support his contention. *Baker* contains a statement of our longstanding rule that a former conviction in after former conviction of felony cases is to be proven only by a properly certified judgment and sentence, along with proper identification of the defendant. Although we agree that *Baker* is a correct statement of the law concerning AFCF cases, we cannot say that such a rule is controlling in the sentencing stage of a capital case.

■ The aggravating circumstance in question reads as follows: "The defendant was previously convicted of a felony involving the use or threat of violence to the person." 21 O.S.1981, § 701.12(1). Thus, the State is required to go beyond simple proof that a defendant in a capital case had prior felony convictions to establish the aggravating circumstance. The State must additionally prove that the prior felonies *involved the use or threat of violence to the person.* The fact that the prior felonies were committed and that the defendant committed them are properly and most easi-

ly proven through the use of the judgment and sentence. However, the element that the felonies involved the use or threat of violence is not so easily and summarily proven. It is therefore necessary that the State present sufficient information concerning the prior felony convictions to support its contention.

The necessity for additional information concerning the nature of the prior convictions to be made known to the trier of fact is obviated by two examples. First we take the example of a person who, not unlike the appellant, stands to be sentenced for murder in the first degree with a prior conviction of rape. One might be led to assume from the face of the crime that rape necessarily involves the use or threat of violence to the victim. It is possible, however, that the rape conviction stemmed not from acts or threats of violence on the part of the defendant, but through sexual intercourse with one incapable of consent. In such a case, the rape conviction would not support the aggravating circumstance.

A second example would be that of a person who stands before the trier of fact in the capital sentencing stage with a prior conviction of murder in the second degree. Once again, as in the above example, the crime seems to imply on its face the use or threat of violence. However, it is possible that the murder conviction may have resulted from the fact that the defendant, while driving under the influence of intoxicants after having been previously convicted of driving under the influence of intoxicants, wrecked his automobile and caused the death of his passengers. The person caused the death of the passengers while in the commission of a felony (i.e. driving while under the influence of intoxicants, second offense, See, 47 O.S.1981, § 11–902), thereby supporting a murder in the second degree conviction, but no one would say that the crime involved the use or threat of violence to the person.

Thus, in many cases, to allege prior convictions, without more, could very well result in an erroneous finding by the trier of fact that previous felonies support the ag-

gravating circumstance, when, in truth they do not. This would result in a gross miscarriage of justice.

■ We realize that the argument might be made that a defendant in a position similar to those described above could simply produce evidence to rebut the implication that his previous felonies involved the use or threat of violence. Such a requirement, however, would amount to a shift in the burden of proof onto the appellant's shoulders to prove the *absence* of the aggravating circumstance. Although the appellant may rightfully be required to raise any *mitigating* circumstances he wishes the trier of fact to consider, he certainly cannot be required to disprove the aggravating circumstances alleged. In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court held that a statute which required a defendant to produce evidence to reduce a charge of homicide to a lesser degree constituted an unconstitutional shift of the burden of proof onto the defendant. The same impermissible result would be reached were we to require a defendant to prove that his former convictions did not involve the use or threat of violence. The State must carry the burden of proving that the circumstances concerning a defendant's prior felony convictions are appropriate to its contention that the defendant should suffer the ultimate penalty of death.

■ We therefore hold that the following must be the procedure concerning the State's allegation of 21 O.S.1981, § 701.-12(1) in this and all future capital cases: First, as mandated by § 701.10, the defendant must be given due notice of all evidence in aggravation the State intends to present; second, the judge must review the evidence proffered by the State in support of its allegation *in camera* to ensure that the felonies did indeed involve the use or threat of violence to the person; third, upon a finding by the trial court that the prior felony convictions did involve the use or threat of

violence to the person, the defendant must be given the opportunity to personally stipulate that the prior felony conviction(s) alleged by the State did involve the use or threat of violence to the person. Counsel for the defendant *must not* be allowed to so stipulate for him. The judge must satisfy himself that the defendant understands and appreciates the nature of the proposed stipulation and the consequences potentially arising from either an agreement or a refusal to stipulate before he may accept the defendant's decision.

If the defendant stipulates, the State's proof of the aggravating circumstances must be limited to introduction of the judgment and sentence in the prior felonies along with the defendant's written stipulation that the felonies involved the use or threat of violence to the person. If the defendant refuses to so stipulate, the State shall be permitted to produce evidence sufficient to prove that the prior felonies did involve the use or threat of violence to the person. We emphasize that prosecutors and trial courts should exercise informed discretion in permitting only the minimal amount of evidence to support the aggravating circumstances. We do not today authorize the State to re-try defendants for past crimes during the sentencing stage of capital cases.

■ In the present case, we cannot say that the prosecutor overstepped permissible bounds in proof of the aggravating circumstance. The victim's testimony did not provide gruesome details of the violence committed upon her by the appellant. She simply identified the appellant as the man who raped her, and testified that he used a knife to threaten her life during the commission of the crime. Likewise, the information charging the appellant in that case served only to inform the jury that the crime involved the use or threat of violence. Although we hold that there was no error in this aspect, we emphasize that the rules herein set forth shall apply to the re-trial of this case.[5]

---

5. The record in this case does not reflect that the State proved that the appellant was either

represented by counsel or intelligently waived representation in his former conviction.

The remainder of the appellant's allegations of error need not be discussed. They concern issues peculiar to the trial giving rise to this appeal. Due to the fact that the appellant must be afforded a new trial, no opinion on the issues are necessary.

For the reasons herein stated, we REVERSE the appellant's conviction and REMAND the case for further proceedings not inconsistent with this opinion.

CORNISH, J., concurs.

BRETT, P. J., concurs in part and dissents in part.

BRETT, Presiding Judge, concurring in part and dissenting in part:

While I agree with the majority opinion that this case must be reversed due to error present at trial, I find that I cannot agree with the opinion's treatment of the appellant's assertion that the use at trial of photographs of the victim was error. In my opinion neither the eight color slides depicting specific wounds on the victim's body at the morgue, nor the sixteen by twenty inch black and white photograph of the victim at the scene of the crime should have been admitted into evidence.

The test used by this Court to determine whether pictures of a homicide victim made subsequent to his death are admissible into evidence is that

> ... they are inadmissible unless they are relevant to some material issue and would reasonably assist the jury in the determination of the defendant's guilt, and this relevancy must outweigh the danger that the jury would substitute emotion for reason as a basis of their verdict. *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958).

The State argues that the eight color slides were necessary to illustrate the testimony of the medical examiner. However, the medical examiner testified that the wounds depicted in the color slides would not be difficult to describe to the jury without

slides and further were not necessary to explain the cause of death. Further, there was no issue or controversy as to the cause of death. These color slides could not aid in the determination of the appellant's guilt, but could only serve to prejudice his right to a fair trial by their gruesome nature and size. The majority opinion mistakenly relies on *Bills v. State*, 585 P.2d 1366 (Okl.Cr. 1978), to support the admission of these slides into evidence. However, in that case, the photographs introduced of the victim's body were "small." I would find the slides in this case inadmissible. *Oxendine*, supra at 943. See also my dissent to *Utt v. State*, 595 P.2d 448 (Okl.Cr.1979).

As for the sixteen by twenty inch black and white photograph taken of the victim at the scene of the crime, there may be some relevance to show the position of the body at the scene. However, I find that because of the large size of the picture, this relevancy is outweighed by the danger that the jury would substitute emotion for reason as a basis of their verdict. *Oxendine*, supra, at 943.

Should the State attempt to prove the former conviction as an aggravating circumstance on re-trial, it has the burden to prove the above.

Failure to do so will render the former conviction inadmissible. See, *Tucker v. State*, 499 P.2d 458 (Okl.Cr.1972).