Bobbie ALEXANDER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–753.

Court of Criminal Appeals of Oklahoma.

April 23, 1975.

Greg Shanahan, Moore & Shanahan, Atoka, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

OPINION

PER CURIAM:

Appellant, Bobbie Alexander, hereinafter referred to as defendant, was charged, and tried in the District Court, Atoka County, Case No. CRF–72–62, for the offense of Murder. Defendant was found guilty of Manslaughter in the First Degree, and was sentenced to serve a term of ten (10) years' imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

Reverend Charles Hanna testified that he knew the defendant through his church. He further testified that the decedent, Judithan Brignance, was the daughter of the defendant and that he had been called to an Atoka County hospital on July 20, 1972, to minister to the family of the decedent. He stated that after three or four hours at

the hospital he walked outside with several members of the victim's family including the defendant. He then stated that he heard the defendant express a desire to speak with law enforcement officials to inform them of a plastic bag that had been around the decedent's head at her house.

Charles McKee testified that he was the defendant's father and on the evening of July 20, 1972, at approximately 11:00 p. m., the defendant came to his home and informed him that something was wrong with the decedent. He stated that he went immediately to the trailer home of the defendant which was located next door. He testified that Judithan was lying in the bed, uncovered and lifeless when he arrived. He further stated that he recalled a conversation outside the hospital regarding a plastic bag.

Lois Alexander testified at trial that she was the defendant's mother and that she, along with her husband, had gone to the hospital the night of the decedent's death. She too testified that as the group was leaving the hospital that night the defendant ran back inside the hospital stating that she wanted to report to a police officer that she remembered a plastic bag being around the child's head. Mrs. Alexander further testified that after the decedent's funeral the defendant told her that she had put the plastic bag in a trash can in the bathroom. The witness further related that the defendant had told her that she would not plead guilty as long as there was a chance that she might be found not guilty.

Dr. Merlin D. Bellamy testified that he was a physician specializing in pathology. He stated that he conducted an autopsy on Judithan Brignance on the 21st of July, 1972, and concluded that the child's death was due to asphyxia. He further testified that the asphyxia was caused by the external cutting off of the child's air. He indicated further that there was nothing in his autopsy to indicate the child suffered from epilepsy. Dr. Bellamy also stated that he

was certain that the child was kept from getting air but he could not testify as to what kept the child from getting the air. His autopsy report stated "suffocation cannot be ruled out." He also related that he found no bruises on the child's body.

Dr. Bellamy testified that on July 11, 1972, he performed an autopsy on Ernie Brignance, Jr., the son of the defendant. He reported that the findings of the autopsies conducted on Judithan Brignance and on Ernie Brignance, Jr. were similar. He stated that originally he had determined the death of Ernie Brignance, Jr. to be caused by asphyxia due to laryngeal edema. However, after further consultation with Dr. Davis, Dr. Chapman and Dr. Jordan of Oklahoma City he amended the autopsy report as to the death of Ernie Brignance, Jr. to state that the cause of his death was asphyxiation caused by an outside force. He stated that by the process of elimination he had concluded that death was probably caused by suffocation in both cases.

B. G. Jones testified that he was an agent for the Oklahoma State Bureau of Investigation and that on July 21, 1972, he conducted an investigation of the death of Judithan Brignance. He identified State's Exhibits No. 1 and No. 2 as being photographs taken at the scene of the crime and State's Exhibit No. 3 as being a plastic bag that had been given him by defense counsel.

Dr. Eugene Davis testified that on July 18, 1972 he was the Senior Medical Officer at the Naval Ammunition Depot in McAlester, Oklahoma. He stated that because the natural father of Judithan Brignance was on active military duty she was qualified for medical treatment by a military physician. He stated that on that date the decedent was brought into his office for a physicial examination to determine if any respiratory infection was present. He stated that he found the child to be in excellent physical condition, and that during the examination the defendant related to him that she (the defendant) had

a long history of epilepsy but had been taking medication that had resulted in her suffering no seizures for the previous 19 months. Dr. Davis related that the defendant, her husband, and Judithan spent approximately an hour and a half in his office, and during that time he observed child abuse tendencies in the mother. He stated that one of the parents pushed the child against a wall of his office bruising her forehead. Dr. Davis then testified (Tr. 89–90) ". . . [S]he then asked me to do another specific examination, to find out whether previous cigarette burns on the child's body had left permanent scars which would be detectable by a pathologist if he should in the near future do an autopsy on Judithan . . . . [S]he also asked me specifically to look for bruises in the diaper area, because she told me at that time that in the past she had punished both Ernie Jr. and Judithan to the point that there were bruises on their bottoms, and she wanted to know specifically if there would be any sign of that, should a pathologist have to do an autopsy on Judithan."

The witness then stated that after the defendant left his office he immediately phoned Dr. Bellamy explaining to him that he suspected foul play in the death of Ernie Brignance, Jr., and also that he suspected Judithan was likewise in danger of dying. The following day he phoned a Mr. Fox of the Atoka County Protection Services to apprise him of this situation.

Marie Smith testified that she was a neighbor of the defendant in July, 1972. She stated that around July 8 of that year the defendant came to her home one night and appeared to be very upset. She testified that, at that time, the defendant stated (Tr. 98), "Marie, I'm cracking up. . . . I want to kill my kids." The witness also testified that after the death of Ernie Brignance, Jr. the defendant stated (Tr. 99) "Marie, remember the night I came over to your house and said I wanted to kill the kids? . . . Well, I really

meant it—and I stood over Ernie's bed with a butcher knife while he was asleep and so I got scared and came over."

Marie Smith testified that on the day following Judithan's death she was asked by the defendant not to inform the authorities of her prior statements regarding her wishes to kill her children. Mrs. Smith also asked the defendant how Judithan died and the defendant stated (Tr. 101) "just like Ernie did, . . . except she had blood running from her nose, and mouth." Mrs. Smith also stated that the defendant had related to her that a plastic bag had been in the hallway of her trailer for several days and that she had thought, "[W]ell if it got on her head—" (Tr. 102).

On cross-examination Mrs. Smith testified that the defendant had made erratic as well as irrational statements in the past.

Ruth McKee testified that she was the defendant's mother and that the defendant was an epileptic. She further stated that during seizures the defendant tended to make erratic statements.

Joy Mills testified that around the middle of July, 1972, she went to the defendant's home to pick plums. She stated that she took a clear plastic bag along with her and when she was told there were no plums to be picked her son blew it up and popped it. She stated that the bag was left at the defendant's home and identified State's Exhibit No. 3 as being like the bag that she had taken to the defendant's home.

Dr. Robert H. Hays testified that he was a general practitioner in Atoka, Oklahoma, and that the defendant had been a patient of his for about five years. He stated that the defendant suffered from psychomotor temporal lobe epilepsy, a type which may result in the victim's going into a trance and performing acts or making statements which are completely inappropriate at times. He testified that after such a seizure the victim would have no recall of incidents occurring during the attack. Dr. Hays indicated that he examined Judithan

Brignance the night that she died, that he informed the defendant that the baby was dead, and the defendant appeared to have a seizure for some ten minutes. He stated that the child was bleeding slightly from the month, but he observed no evidence of foul play. He also indicated that there was nothing on the autopsy report which was inconsistent with his findings that the cause of death could not be positively determined.

Dr. David Simpson, D. O., testified that he was a qualified Medical Examiner. He stated that he began treating the defendant in March of 1973, and confirmed that the defendant suffered from epilepsy. He testified that the defendant appeared to be grieved by the death of her children. He testified that the cause of Judithan's death was apparently suffocation and theorized that if someone had placed a plastic bag over the child's head there should have been noticeable bruises.

On cross-examination Dr. Simpson testified that he, at no time, saw the body of either Judithan or Ernie Brignance, Jr.

■ The defendant's first assignment of error alleges that the trial court erred in admitting testimony relating to the similar death of defendant's son a few days prior to the death of defendant's daughter, for which she stood charged herein.

In Turnbow v. State, Okl.Cr., 451 P.2d 387 (1969), this Court quoted the Syllabus by the Court in Rhine v. State, Okl.Cr., 336 P.2d 913 (1958) stating:

"1. As a general rule, in the prosecution of one accused of a particular offense, evidence showing or tending to show the commission by accused of another crime or crimes entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible.

"2. An exception to the general rule exists when the evidence of similar offenses tends to show a system, plan,

or scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other."

See also, Moulton v. State, Okl.Cr., 476 P.2d 366 (1970); Smith v. State, 83 Okl.Cr., 209, 175 P.2d 348 (1946).

In the instant case there is testimony related that indicates the defendant had stated that she wanted to kill her children, and had, at a later date, reasserted this desire. Testimony also relates that the results of the autopsies performed on the defendant's two children were similar. This testimony shows a plan on the defendant's part to rid herself of her children. The record reflects that the trial court properly restricted the jurors' use of this evidence in his instructions and we, therefore, find this assignment of error to be without merit.

■ Defendant asserts that the trial court erred in permitting Dr. Eugene Davis to testify as to information obtained during an examination of the deceased child, as her second assignment of error.

The record reflects that the testimony of Dr. Davis related observances and statements that occurred during his examination of Judithan Brignance which led him to believe that there existed child abuse tendencies in the defendant. This State by statute (21 O.S.Supp.1972, § 846) requires that such observances be reported. Further, 21 O.S.1971, § 848 provides:

"In any proceeding resulting from a report made pursuant to this act or in any proceeding where such a report or any contents thereof are sought to be introduced in evidence, such report or contents or any other fact or facts related thereto or to the condition of the child who is the subject of the report shall not be excluded on the ground that the matter is or may be the subject of a physician-patient privilege or similar privilege or rule against disclosure."

The evidence presented in the instant case falls within the purview of the above

statutes, and as such was admissible. Therefore there is no merit to this assignment of error.

Defendant asserts as her third assignment of error that the trial court erred in overruling her motion for mistrial based on the admission of evidence that was the basis of defendant's first assignment of error. In the first proposition we held that such evidence was properly admitted and as such the admission of that evidence would not be a basis on which a motion for a mistrial could be sustained. We, therefore, find that this proposition is without merit.

As her fourth assignment of error, defendant asserts that the trial court erred in instructing the jury as to the consideration to be given to the evidence asserted as error in defendant's first and third assignments of error.

 With the admission of the evidence of the death of defendant's son, it became necessary for the trial court to instruct as to the consideration that such evidence could be given. This Court in Wimple v. State, Okl.Cr., 397 P.2d 696 (1964), in the Syllabus by the Court, stated:

"5. When evidence of other offenses allegedly committed by accused is offered for the purpose of showing a common scheme, plan or intent, such evidence, to be admissible, must clearly come within the exceptions to general rule that accused must be convicted, if at all, by evidence showing him to be guilty of the offense charged, and when such evidence is admitted, *it is the duty of the trial court in his instructions to the jury to so limit the consideration of such evidence.*" (Emphasis by the Court)

In the instant case the trial court's instruction to the jury was necessary and as such we find no merit to this assignment of error.

The judgment and sentence of the trial court is hereby affirmed.