**Ronald B. KLINEKOLE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–329.**

Court of Criminal Appeals of Oklahoma.

Dec. 7, 1977.

Richard D. Strubhar, Public Defender, Yukon, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge.

Ronald B. Klinekole, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Canadian County, Case No. CRF–76–69, for the offense of Rape in the First Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1114. His punishment was fixed at a term of ten (10) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At trial, Marilyn Bull Bear, age thirteen, testified that the defendant came to her uncle's house on April 1, 1976, at approximately 10:00 p.m. Defendant wanted her to go with him to look for her mother and aunt. Defendant stopped at several "beer joints" en route to Oklahoma City. They were unsuccessful in finding her mother and aunt and started to return home. Defendant was stopped by a policeman who eventually let them go. Defendant told her to take off her clothes and get in the back seat. She complied because she was afraid of him. The defendant got on top of her and "stuck himself in me." [Tr.34] Defendant then drove his car from Canadian County into what she thought was Caddo County. Defendant attempted to have intercourse with her again, but was unsuccessful because she would not be still. De-

fendant took her to her grandfather's house in Hinton. She changed clothes and started walking toward Anadarko. Her mother picked her up and she told her what happened. On cross-examination she testified that defendant had been to her house on several occasions to visit her aunt. She "took a liking to" him and felt he was a replacement for her father. She admitted running away from home on several occasions, and that she was pregnant. She testified that she did not know whether or not the defendant was the father of the child.

Dr. William E. Hood, Jr. testified that he examined Marilyn Bull Bear on September 29, 1976. He determined that she was pregnant and that the date of conception was consistent with April 1st or 2nd.

Dr. Stephen Ross Arthurs testified that he examined Marilyn Bull Bear on April 2, 1976. They took a vaginal smear from her which revealed dead sperm. He testified that in his opinion she had intercourse within a few hours prior to the examination.

Clarence Jeffries testified that on April 2, 1976, he was employed as a police officer with the City of Mustang. He stopped the defendant for a traffic violation at approximately 4:00 a.m. A young Indian girl was a passenger in defendant's vehicle. He determined that defendant was not intoxicated and did not arrest him.

Kathy Lynn Edge, Marilyn's aunt, testified that on April 2, 1976, at approximately 7:20 a.m., Marilyn and the defendant arrived at her house in defendant's car. Marilyn started crying and stated that defendant had "done something to her he wasn't suppose to do." [Tr.107] Marilyn changed clothes and started running toward Anadarko. The witness called her sister and requested that she pick up Marilyn on the roadway.

Velma Bull Bear, Marilyn's mother, testified that she received a call from her sister on April 2nd at about 7:30 a.m. She started driving toward Hinton and picked up Marilyn near the Binger "Y" Store. Marilyn told her that the defendant had raped her. She reported the incident to the proper authorities.

Deputy Sheriff T. J. Bollinger testified that he took Marilyn Bull Bear to be examined by Dr. Arthurs. Marilyn then directed him to a certain location which he determined to be in Canadian County.

Defendant testified that he shared an apartment with Kathy Edge in October of 1970. They continued to have a relationship until April, 1976. He further testified that on April 1, 1976, he needed to talk to Kathy. He started looking for her and asked Marilyn if she knew where her aunt was. Marilyn got in his car and said that she was going to go with him to look for her aunt and mother. They checked several bars between Anadarko and Oklahoma City. Marilyn stayed in the car while he went into the bars. Subsequently, he observed that four cans of beer were missing from his car. They started back to Oklahoma City and were stopped by a policeman in Mustang. The police officer talked to him and advised him to roll down the window and get some fresh air. He drove a short distance and determined that he was too sleepy to drive. They slept until daylight and he took her home. He denied having sexual intercourse with the girl.

On cross-examination, the prosecuting attorney questioned defendant concerning State's Exhibit 6, a letter written to Kathy Edge. Defendant first acknowledged that it appeared to be his handwriting, but later testified that he would not admit the handwriting because there was no signature. Defendant admitted writing State's Exhibit 7, another letter to Kathy Edge. Both exhibits were admitted for the jury's consideration. State's Exhibit 6 stated, in part, as follows:

" . . . Even if I did admit I got to Marilyn you can bet, it wasn't in the manner of the charge, according to the word Rape, for rape is forcible and against one's will. She agreed and promised again. Now, I know that I was wrong, for she is under age. . . ." [Tr.252]

Raymond Tselee testified that he knew both the defendant and Kathy Edge. They

lived together for quite a while and argued and fought when they drank.

Durrell Cooper testified that he operated a tavern in Anadarko; that on occasions defendant and Kathy Edge would fight while drinking in his tavern.

■ Defendant asserts, in the first assignment of error, that he was improperly charged as a habitual criminal. The record reflects that no evidence as to the previous convictions was introduced at the preliminary hearing; that defendant raised the same for the first time by filing a Motion to Quash. The trial court properly found that there was not sufficient evidence presented to bind defendant over as to "Page Two of the Information Only." The case was remanded back to the same judge that heard the preliminary hearing, for further hearing. The hearing was held and the State introduced evidence as to former convictions and defendant was gain bound over for trial. Defendant argues that the old Information should have been dismissed, a new Information filed, and that a preliminary hearing be held anew, citing as authority, *Roberson v. State*, Okl.Cr., 362 P.2d 1115 (1961) and *Carter v. State*, Okl.Cr., 292 P.2d 435 (1956). In *Roberson*, supra, we held that the second and subsequent charge requires pleading in the preliminary information and is a matter of substance. In *Carter*, supra, we held that where the allegations of former convictions were not contained in the preliminary information and no proof of such convictions was made at the preliminary hearing, the trial court erred in not sustaining defendant's Motion to Quash. In the instant case the trial court properly remanded the case for further preliminary hearing when it ascertained that the "After Former" portion was contained in the preliminary information and that no proof was introduced at the preliminary hearing as to the former convictions. We agree with the trial court's reasoning wherein he overruled defendant's Motion to Quash, prior to trial, and stated:

"Now, certainly the Court can take judicial knowledge of it's [sic] own Court files and that transcript was here and in the file. Also, Judge Taylor who heard the second preliminary is the same magistrate who heard the first preliminary and there is no reason why he should not be able to use whatever knowledge he obtained the first time around, plus the Court file would be available to him in his decision in the second preliminary.

"After hearing or at the second preliminary which did include proof as to the second page of the Information, he again bound the defendant over for the trial division and that is where we are now. "The Court feels that, although it may not have been as adroitly handled as I would like in the second preliminary so that I am not sure the record is all that clear about just what was done, at the same time, I find that the defendant has had ample notice of the charge against him, ample notice of what would be attempted to be proven and ample opportunity to prepare and defend against any of the charge that he may find inappropriate.

"The Court finds that there has been absolutely no prejudice to this defendant. . . . ." [Tr. 6 & 7]

We find defendant's first assignment of error to be without merit.

■ Defendant contends, in the second assignment of error, that the State failed to introduce sufficient proof of penetration. We are the opinion that this assignment of error is wholly without merit. The prosecutrix testified on direct examination, cross-examination and re-direct examination, that the defendant "entered her." Dr. Arthurs testified that he found dead sperm in the prosecutrix's vagina. Dr. Hood testified that the conception date of the prosecutrix's pregnancy was consistent with the time of the intercourse.

■ Defendant finally alleges that the trial court erred in admitting evidence of the subsequent acts of sexual intercourse between the defendant and the prosecutrix in Caddo County. We are of the opinion that such evidence was clearly admissible as being part of the res gestae and as an exception to the general rule prohibiting

the introduction of evidence of another crime. We have consistently held that such evidence is admissible where it tends to show a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish proof of the other. See, *Moulton v. State*, Okl.Cr., 476 P.2d 366 (1970) and *Alexander v. State*, Okl.Cr., 534 P.2d 1313 (1975). We would further observe that the trial court properly gave a limiting instruction as to the introduction of such evidence, in accordance with *Wimple v. State*, Okl.Cr., 397 P.2d 696 (1964). We, therefore, find this assignment of error to be without merit.

In conclusion we observe the record is free of any error which would require reversal or justify modification. The judgment and sentence is, accordingly, *AFFIRMED*.

CORNISH, J., concurs.

BRETT, J., specially concurs.

BRETT, Judge, specially concurring:

I concur except that inasmuch as the general rule permitting the introduction of evidence of other crimes applies only where there are two or more distinct and independent offenses, the rule is not applicable here. See inter alia *Turnbow v. State*, Okl. Cr., 451 P.2d 387 (1969); *Rhine v. State*, Okl.Cr., 336 P.2d 913 (1958). I consider that only one offense occurred, so under the facts of this case, the evidence of the subsequent attempted penetration was admissible as part of the res gestae of the offense charged and not as an exception to the other crimes rule.